1  Duane A. Bosworth, OSB #825077
Tim Cunningham, OSB #100906
2  DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
3  Portland, Oregon  97201-5610
Facsimile:  (503) 778-5299
4  duanebosworth@dwt.com
timcunningham@dwt.com
5  Telephone:  (503) 241-2300

6      Attorneys for Plaintiff
       *Pro Hac Vice*

7

8

9

10

11              IN THE UNITED STATES DISTRICT COURT

12                 FOR THE DISTRICT OF ARIZONA

13  Penguin Group (USA) Incorporated,

14                        Plaintiff,          Case No. CV-13-02075-TUC-JGZ

15      v.                                    **Plaintiff's Opposition to Motion to
                                              Quash Deposition Subpoena of
16  American Buddha,                          Charles Carreon**

17                        Defendant.

18

19                          **INTRODUCTION**

20      Plaintiff opposes Charles Carreon's motion to quash.

21      Defendant American Buddha has submitted to this Court Charles Carreon's July

22  16, 2014 declaration (Dkt. 120-2) stating that he, and only he, was competent to respond

23  to discovery requests propounded by plaintiff.  Mr. Carreon's declaration added that his

24  wife, defendant's sole officer, was "remarkably uninformed" about discoverable issues.

25  More recently, when plaintiff noticed 30(b)(6) topics regarding the same inquiry,

26  however, American Buddha designated Ms. Carreon.  Today, when plaintiff seeks to

27  depose the best source of unarguably discoverable information, Mr. Carreon claims both

28  privilege and undue burden, despite having had most of a month's notice that plaintiff

                                   1

1   sought to depose him.  Mr. Carreon seeks to avoid his deposition, entirely, by asserting

2   that every single thing he knows is privileged.  If that weren't enough, (1) he tells this

3   Court he cannot be burdened with being deposed at this time at all —in fact, he very

4   recently communicated through defendant's counsel that he is not available at all until

5   into November (at the same time communicating that defendant will object to any

6   extension of discovery part the date on which Mr. Carreon's deposition is scheduled)—

7   and (2) he also tells this Court, in his instant September 30 declaration, that he will

8   physically attend the depositions of his wife on October 7.

9       Mr. Carreon is not correct about privilege.  His motion to quash should be denied.

10                                         **FACTS**

11      This litigation concerns defendant's reproduction and distribution of complete

12  copies of plaintiff's copyrighted works on the internet.  Plaintiff seeks to prove when and

13  how the works became available, how often they were available, how many times they

14  have been accessed, and other facts underlying the operation of the websites.  In addition,

15  plaintiff seeks to discover what facts defendant offers in defense of its activities.  Plaintiff

16  propounded discovery requests, including interrogatories, requests for admission, and

17  requests for production, covering these topics.

18      When moving this Court for an extension of time to respond to those discovery

19  requests, defendant American Buddha submitted the declaration of Charles Carreon, in

20  which he stated, "I Am the Institutional Memory of the Technical and Legal Aspects of

21  Defendant American Buddha's Operation."  Dkt. #120-2.  Among other elaborations to

22  this Court, Mr. Carreon declared that "I am the person who can respond to the Discovery

23  Requests," that "I am the institutional memory of virtually everything related to the

24  technical functioning of the website" and that "Mrs. Carreon on the other hand, . . . has

25  remained remarkably uninformed about the technical and operational particulars that are

26  the subject of many of the inquiries set forth in the Discovery Requests."  Plaintiff seeks

27  to inquire in Mr. Carreon's deposition about those very "technical and operational

28  particulars."  Mr. Carreon's earlier motion, in July, stated that because of Mr. Carreon's

2

1    schedule, he could not then provide responses to the propounded discovery, to which, he

2    declared, only he could respond.

3          Following some of defendant's responses in late August, on September 11, 2014

4    plaintiff confirmed with counsel for American Buddha that plaintiff sought "depositions

5    of Tara Carreon, Charles Carreon, and a Fed. R. Civ. P. 30(b)(6) witness" and proposed

6    dates for these three depositions, to take place on two consecutive days.  Over the next

7    eight days, counsel spoke together on the telephone and exchanged emails regarding

8    scheduling of these three depositions, including Mr. Carreon's.  That correspondence

9    related only to finding the best days for conducting these three depositions – of Mrs.

10   Carreon; a 30(b)(6) witness; and Mr. Carreon.  Late on the afternoon on Friday,

11   September 19, 2014, however, for the first time, defendant's counsel stated that Mr.

12   Carreon "has not agreed to be deposed by Penguin," and that defendant's counsel did not

13   represent Mr. Carreon.  Defendant's counsel provided Mr. Carreon's email address for

14   contact.  (None of this information came from Mr. Carreon).  On Tuesday, September 23,

15   2014, plaintiff's counsel corresponded directly with Mr. Carreon at the email address

16   provided by defendant's counsel and noticed Mr. Carreon's deposition.  To this moment

17   Mr. Carreon has never responded to that in any way, except for his present motion to this

18   Court.  In the absence of a response *of any kind*; in light of planned travel to Tucson to

19   take two other depositions; and in light of defendant's counsel's statement that defendant

20   would not extend discovery for rescheduling Mr. Carreon's previously planned, in fact

21   noticed, deposition premised in the earlier availability conveyed by defendant's counsel;

22   and out of an abundance of caution, plaintiff served Mr. Carreon with a subpoena.

23         Mr. Carreon now[1] moves to quash that subpoena because, he states, he is a counsel

24   for the corporate defendant and he is married to Ms. Carreon, who is the sole director of

25   the corporate defendant.  Despite declaring to this Court that only he could respond to

26   _____

27   [1] Plaintiff notes that everything Mr. Carreon has submitted is *dated* September 30, 2014.
     Mr. Carreon has chosen a method of delivery however, that resulted in first notice to

28   Plaintiff of his motion late in the day two days later, on October 2, 2014.

3

1   previous discovery requests, including "many . . . inquiries" about "technical and

2   operating particulars" concerning the websites, about which Ms. Carreon is "remarkably

3   uninformed", Mr. Carreon now asserts that *all* of his knowledge is privileged under either

4   attorney client privilege or spousal privilege.

5                                   **ARGUMENT**

6   **A.      Mr. Carreon's blanket invocation of attorney-client privilege is not**
            **correct.**
7

8          Mr. Carreon's motion proceeds from a false premise—that "when seeking to

9   depose opposing counsel, the cards are stacked against the requesting party from the

10  outset and they must prove the deposition's necessity."  Motion at 2 (citing

11  *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 263 F.R.D. 1, 8 (D.D.C. 2009)).

12  That proposition fails for two independent reasons.  First, Mr. Carreon *is not* opposing

13  counsel in this matter.  *Cf. United States v. Philip Morris, Inc.*, 209 F.R.D. 13, 18 (D.C.

14  Cir. 2002) (allowing deposition of in-house counsel where plaintiff sought factual, as

15  opposed to legal, information, and the deponent was not trial counsel).  In fact, the rules

16  of this Court prohibit Mr. Carreon from representing Defendant in this action.  LR Civ.

17  83.1(b)(2) (prohibiting attorneys who reside in Arizona, but are not licensed in Arizona,

18  from appearing *pro hac vice*).

19         The second failure of the proposition is that in the Ninth Circuit, there is no

20  particular heightened burden for deposing an attorney, especially where, as here, the

21  attorney in question is *not* counsel of record in the pending case, and the attorney, by his

22  own extensive declarations, is the best source for discoverable information.  Fed. R. Civ.

23  P. 30(a)(1) ("A party may, by oral questions, depose any person…").  The *Guantanamera*

24  case relied upon by Mr. Carreon drew the proposition from *Shelton v. Am. Motors Corp.*,

25  805 F.2d 1323, 1327 (8th Cir. 1986).  *Guantanamera*, 263 F.R.D. at 8.  *Shelton* holds that

26  a deposition of *opposing counsel* may be taken where the party seeking the deposition

27  "has shown that (1) no other means exist to obtain the information than to depose

28  opposing counsel, (2) the information sought is relevant and nonprivileged; and (3) the

                                          4

1    information is crucial to the preparation of the case." *Shelton*, 805 F.2d at 1327.

2          Not only is Mr. Carreon not opposing counsel, but "the Ninth Circuit has not

3    adopted the Eighth Circuit's reasoning in *Shelton*." *Younger Mfg. Co. v. Kaenon, Inc.*,

4    247 F.R.D. 586, 588 (C.D. Cal. 2007) (adopting instead the Second Circuit's "flexible

5    approach" from *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 71-72 (2d Cir.

6    2003)); *see also Arizona v. Frito-Lay, Inc.*, 273 F.R.D. 545, 558 (D. Ariz. 2011) (finding

7    that, "[t]o the extent [the *Shelton*] requirements apply to this case, they are met.").  The

8    rule in *In re Subpoena Issued to Dennis Friedman*, which unlike *Shelton* has actually

9    been applied by courts in the Ninth Circuit, is that whether a deposition of a lawyer

10   should take place requires the court to consider various factors, including:

11               the need to depose the lawyer, the lawyer's role in connection
                 with the matter on which discovery is sought and in relation
12               to the pending litigation, the risk of encountering privilege
                 and work-product issues, and the extent of discovery already
13               conducted.... Under this approach, the fact that the proposed
                 deponent is a lawyer does not automatically insulate him or
14               her from a deposition nor automatically require prior resort to
                 alternative discovery devices, but it is a circumstance to be
15               considered.

16   *Younger Mfg. Co.*, 247 F.R.D. at 588 (quoting *In re Subpoena*, 350 F.3d at 72).

17   Ultimately, either test is met in this case because by his own declarations Mr. Carreon

18   possesses important, relevant, non-privileged information that plaintiff is entitled to

19   discover, and about which the only other possible deponent, Ms. Carreon, is "remarkably

20   uninformed."

21         Mr. Carreon claims that his entire relationship with defendant—in fact all of "his

22   knowledge"—is privileged because, although prohibited in this matter, he acts as its

23   lawyer.  The privilege attaches, however, only to "communications between an attorney

24   and client *for the purpose of obtaining legal advice*." *Marceau v. I.B.E.W.*, 246 F.R.D.

25   610, 613 (D. Ariz. 2007) (emphasis added) (citing *United States v. Martin*, 278 F.3d 988,

26   999 (9th Cir. 2002)).  In addition, communication in question must be confidential in

27   nature. *United States v. Martin*, 278 F.3d 988, 999-1000 (9th Cir. 2002).  Moreover, the

28   privilege is to be strictly construed, *United States v. Zolin*, 809 F.2d 1411 (9th Cir. 1987),

                                                5

1    and the burden of establishing the privilege is on its proponent.  *Martin*, 278 F.3d at 999-

2    1000.

3          In this light, Mr. Carreon's blanket invocation of privilege fails in several respects.

4    As an initial matter, he has failed to provide any particular analysis regarding *which*

5    communications with defendant are privileged, as is his burden.  *Martin*, 278 F.3d at

6    1000 ("Blanket assertions [of privilege] are 'extremely disfavored.'" (citation omitted)).

7    Similarly, Mr. Carreon has failed to establish that all of the topics he seeks to protect are

8    actually *legal advice*.  *Marceau*, 246 F.R.D. at 613 ("The attorney-client privilege's cloak

9    of secrecy is secured only through punctilious fidelity to its elements. If it is invoked to

10   protect communications beyond those made for the purpose of obtaining legal advice, the

11   privilege is lost.").  Similarly, "where the attorney develops what is predominately

12   business advice, no privilege applies."  *Id.*

13         In this case, there are numerous topics concerning the technical and operational

14   aspects of the websites in question on which Mr. Carreon has declared to this Court he is

15   the best source of information regarding defendant's activities.  Mr. Carreon's July 16,

16   2014 declaration in support of defendant's motion for an extension of time to respond to

17   discovery provided the following to this Court:

18         •    "I am the person who can respond to the Discovery Requests."

19         •    "I am the person best able to respond to the Discovery Requests."

20         •    "I Am the Institutional Memory of the Technical and Legal Aspects of
21              Defendant American Buddha's Operation."

22         •    "I have worked for American Buddha, the defendant in this case, since year
23              2000…."

24         •    "I have assisted American Buddha in its nonprofit mission to provide
25              library access to scholars and students on the Internet by providing hosting
26              for American-Buddha.com website, and arranged the technical structure
27              necessary for the site to operate . . . and became fairly well-acquainted with
28              many of the internal processes of website operation."

6

1   •   "Mrs. Carreon, on the other hand, aside from building and publishing web
2       pages, does none of the technical Internet tasks that keep the American-
3       Buddha.com and NaderLibrary.com sites active and responsive to user
4       activity, and thus she has remained remarkably uninformed about the
5       technical and operational particulars that are the subject of many of the
6       inquiries set forth in the Discovery Requests."

7   •   Mr. Carreon further adds that "I am the institutional memory of virtually
8       everything related to the technical functioning of the website . . ."

9   Dkt. #120-2.  These statements about his technical and operational actions are in
10  contradiction to Mr. Carreon's motion, which states that "[p]rivileged matters are
11  essentially all that the witness knows about, when it comes to American Buddha."
12  Mr. Carreon has told this Court that he knows about these technical operational matters,
13  that he has assisted defendant in, "its nonprofit mission, providing hosting for [the]
14  American-Buddha.com website, and arrang[ing] the technical structure necessary for the
15  site to operate" and that he knows more about the websites' technical aspects than
16  anyone.  All of these topics are plainly business topics, relevant to plaintiff's claim,
17  which seeks to establish that the operation of the website infringes plaintiff's copyrights.

18          Even topics seemingly legal are not wholly privileged.  Mr. Carreon asserts that he
19  has "performed legal analysis that American Buddha has relied on in pursuing its mission
20  in the face of occasional *opposition from publishers*." (emphasis added).  Who those
21  publishers are is not privileged, nor is any advocacy that Mr. Carreon or American
22  Buddha delivered to those publishers.  *Martin*, 278 F.3d at 1000 (noting that the privilege
23  can be waived).  Finally, Mr. Carreon's status as the DMCA agent for American Buddha
24  is decidedly *not* privileged, at least in so far as his actions in that capacity include
25  "manag[ing] any followup communications with the publisher agents who have contacted
26  me."  Carreon Decl. ¶ 7.  Those communications are expressly waived and they are
27  relevant to exploring defendant's defenses.

28          In fact, the premise that Mr. Carreon, by his declaration the architect of the

7

1   "technical structure necessary for the site to operate" can (1) respond to discovery on

2   behalf of defendant—including responding to requests for admission and

3   interrogatories—as he asked this Court to be able to do, without *ever* asserting privilege,

4   but (2) later assert a blanket privilege to withhold any explanation of those answers, is

5   false.  If answering questions about the technical aspects of the websites and American

6   Buddha's previously articulated legal rationales supporting the website called for

7   privileged information, then that objection was timely in responding to discovery

8   requests.  No objection was ever made, however, and any privilege has already been

9   waived.  (And for reasons discussed, the answers provided were not privileged.)

10          It cannot be said that plaintiff clearly seeks privileged information or *certainly* that

11   all information plaintiff could and will seek is privileged.  Motion at 4.  Defendant has

12   provided evasive answers to discovery—by statements prepared by Mr. Carreon

13   himself—which plaintiff is entitled to explore.  For example, in response to a request for

14   admission asking whether Defendant "posted" plaintiff's copyrighted works on

15   defendant's websites, defendant responded:

16              "Objection is respectfully made to the term 'posted.'
              Although this metaphorical term is widely used by laypersons
17              to describe the manner in which text and images are made to
              appear on the Internet, it is an inapposite metaphor to describe
18              the operation of a website.  Website creation, maintenance,
              and operation is dynamic.  Websites do not appear in a public
19              space, but only on privately-owned individual devices.
              Website content is not accessible *en masse*, but is made
20              available one URL at a time, and continues only as long as
              numerous parameters are met.  The verb 'post' connotes
21              posting in a static medium (incorrectly analogizing photons to
              ink or paint), and thereby becomes visible to multiple persons
22              at one time (incorrectly analogizing the operation of URLs to
              public space).  Construing the term 'post' to mean 'affixing
23              text and images to a medium that is publicly viewable by
              multiple viewers in a public location,' RFA #1 is DENIED."

24

25   Bosworth Declaration Ex. 2.  Plaintiff is entitled to follow-up on its question through

26   deposition of the "Institutional Memory of the Technical * * * Aspects of Defendant

27   American Buddha's Operation," concerning the placement of plaintiff's works on the

28   Websites.  That follow-up does not call for privileged information.

8

1    Under these circumstances, the deposition of Mr. Carreon should not be quashed

2    under attorney-client privilege as described in either the *In re Subpoena* test or the

3    *Shelton* test.[2]  Under the former, "the lawyer's role in connection with the discovery

4    sought" weighs in favor of the opposed deposition.  The lawyer in question has declared

5    to this Court that he is often the single and certainly the best source for technical

6    information regarding the website and regarding legal matters for which any privilege

7    that might have attached has been waived.  This lawyer's "role in relation to the pending

8    litigation" is neither as counsel nor party.  Under this Court's rules Mr. Carreon may not

9    appear *pro hac vice*.  There is certainly no "blanket" privilege established by Mr.

10   Carreon.  Additionally, plaintiff has already propounded discovery on numerous topics,

11   and by Mr. Carreon's statements, Mr. Carreon himself prepared responses which plaintiff

12   is entitled to explore.  If there are *any* privileged matters, they do not preclude his entire

13   deposition ab initio.  *Cf. Younger Mfg. Co.*, 247 F.R.D. at 589 ("Darren's deposition is

14   like the deposition of any other percipient or fact witness, and should not be

15   prohibited.").

16        Even under the more restrictive *Shelton* test, the deposition is warranted.  Mr.

17   Carreon is not "opposing counsel."  Even if he were, the *Shelton* test would be met.  First,

18   Mr. Carreon has declared that he is the best, if not only, source of information for several

19   areas of relevant discovery, including the technical operation of the websites.  He has

20   similarly told the Court that Ms. Carreon is "remarkably uninformed about the technical

21   and operational particulars that are the subject of many of the inquiries set forth in the

22   _____

23   [2] Mr. Carreon's invocation of *In re Gray*, 123 Cal. App. 3d 614, 617 (1981), does not aid
     him.  The case is cited for the proposition that "[w]hen a California attorney is called to
24   testify by an adverse party, he is bound to assert the attorney-client privilege."  Motion at
     2.  That case only stands for the proposition that where a party puts communications with
25   their attorney at issue, that party has waived the privilege with respect to those
     communications.  Even if the case were to stand for the proposition for which it is
26   offered, it would invite the question of *where* Mr. Carreon was acting in his capacity as a
     California attorney with respect to American Buddha.  *See* Ariz. Supreme Court Rule
27   31(b) ("[N]o person shall practice law in this state  . . . unless the person is an active
     member of the state bar.").
28

9

1    Discovery Requests."  (Despite this knowledge disparity, American Buddha designated

2    Ms. Carreon as the sole deponent for plaintiff's properly noticed 30(b)(6) deposition,

3    which covers many of the same topics addressed in earlier discovery.)  Second, plaintiff

4    seeks to discover evidence relating to the technical operation of the websites, the legal

5    theories that American Buddha has previously *publically* adopted to justify its conduct,

6    and the communications with other publishers.  All of this information is "relevant and

7    nonprivileged."  Finally, the information is central to the preparation of the case;

8    understanding the technological workings of the websites and defendant's view of them

9    is significant.  Defendant's interrogatory responses and responses to requests for

10   admission reveal unprecedented theories of Fair Use and the Library Exception that

11   plaintiff is entitled to explore.  Even under *Shelton*, to the extent it could apply, the

12   deposition is warranted.  *Cf. Arizona v. Frito Lay*, 273 F.R.D. at 558 (allowing deposition

13   of attorney where attorney was a fact witness, there was no adequate alternative to

14   discovery, and the evidence was crucial to the proponent's case).

15          **B.      The spousal privileges are inapplicable.**

16          Mr. Carreon also asserts two spousal privileges, the testimonial privilege and the

17   spousal communications privilege.  First, the testimonial privilege, which "permits a

18   witness to refuse to testify *against his or her spouse*," *United States v. Montgomery*, 384

19   F.3d 1050, 1056 (9th Cir. 2004), has no literal application here, where Mr. Carreon's

20   spouse, Tara Carreon, is not the defendant.  *Knepp v. United Stone Veneer, LLC*, No.

21   4:06-CV-1018, 2007 WL 2597936 at *3 (M.D. Pa. 2007) ("Robin Barrett is not being

22   compelled to testify against her husband. Her husband is not a defendant in the current

23   litigation. Therefore, we do not believe the justification for the privilege, which is

24   preserving marital harmony, is applicable.").  Second, the privilege cannot apply in this

25   civil case because "the privilege against adverse spousal testimony is only applicable in

26   criminal actions."  *Engelmann v. Nat'l Broadcasting Co.*, No.94#Civ.5616(MBM) (AJP),

27   1995 WL 214500 at *2 and n.2 (S.D.N.Y. 1995) (citing *Hawkins v. United States*, 358

28   U.S. 74, 77, 79 S. Ct. 136, 138 (1958) (privilege is available only in trial "where life or

                                              10

1    liberty is at stake"); *United States v. Van Drunen,* 501 F.2d 1393, 1397 (7th Cir.), *cert.*

2    *denied,* 419 U.S. 1091, 95 S. Ct. 684 (1974) (privilege limited to cases where a "spouse

3    ... observes evidence of the other spouse's crime.")); *see also Knepp,* 2007 WL at *3

4    ("[T]he adverse spousal privilege is only applicable in criminal proceedings.").

5            Second, the spousal communication privilege is not applicable here, either.  That

6    privilege, which "(1) extends to words and acts intended to be a communication; (2)

7    requires a valid marriage; and (3) applies only to confidential communications,"

8    *Montgomery*, 384 F.3d at 1056, does not protect communications that relate to business

9    transactions—as opposed to confidential marital communications.  The rationale is

10   simple—conversations between Mr. and Ms. Carreon regarding whether or not the

11   webserver was operational, or how many times plaintiff's works were accessed by users,

12   are not "confidential" within the privilege as it has been delineated.  If they were,

13   husbands and wives would have an exceptional end run in any litigation in which they

14   maintained a business or agency relationship.  "Unless there is an exception for business

15   communications, marital partnerships will have a litigious advantage over business

16   partnerships in suits involving business rather than family affairs."  25 Wright & Graham,

17   Federal Practice & Procedure § 5595; *see also* 81 Am. Jur. 2d Witnesses § 324

18   ("Ordinary conversations between spouses on matters of business or property, not

19   confidential in their nature nor induced by the marital relation, are not privileged. . . . A

20   conversation relating to business transactions, such as . . . business matters transacted by

21   one spouse as agent for the other . . . rebut the presumption of confidentiality."); Kenneth

22   S. Brown *et al*, 1 McCormick on Evidence § 80 at 510-511 (7th Ed. 2013) ("The fact that

23   the communication relates to business transactions may show that it was not intended as

24   confidential.  Examples are statements about business agreements between the spouses,

25   or about business matters transacted by one spouse as agent for the other. . . . Usually

26   such statements relate to facts that are later intended to become publicly known.  To

27   cloak them with privilege when the transactions come into litigation would be productive

28   of special inconvenience and injustice."); *In re Southern Air Transp., Inc.*, 255 B.R. 706,

11

1   713 (Bankr. S.D. Ohio 2000) ("It would be improper to shield non-confidential

2   conversations between 'business associates' about business matters solely based on the

3   fact that the 'business associates' are also married."); *G-Fours, Inc. v. Miele*, 496 F.2d

4   809, 811 (2d Cir. 1974) (declining to protect "conversations relating to matters of

5   business which there is no reason to suppose he would have been unwilling to hold in the

6   presence of any person."); *Dommel Properties, LLC v. Jonestown Bank & Trust Co.*, No.

7   1:11-CV-02316, 2013 WL 4855427 at *5 (M.D. Pa. Sept. 11, 2013) ("As both parties

8   correctly point out, the privilege for confidential communications generally excludes

9   knowledge or communications between spouses relating to matters of business or

10   property in the absence of contrary indications.").

11       In other words, even if Mr. and Ms. Carreon were the "only people present" when

12   a communication occurred, that does not cloak it with the privilege.  Instead, the privilege

13   attaches only to confidential marital communications.  Communications between the

14   President of American Buddha and Charles Carreon acting as an agent for the corporation

15   are not confidential marital communications.  To hold otherwise could effectively shield

16   vitally *all* evidence in this case because questions could not be asked of either Mr.

17   Carreon *or* Ms. Carreon, concerning any matter they ever discussed.

18       Finally, Mr. Carreon has failed to establish, in particular, how his *knowledge* of

19   American Buddha's technical operations arose from communications with his spouse.

20   Mr. Carreon's declaration states clearly that Ms. Carreon is "remarkably uninformed"

21   about such matters, indicating that Mr. Carreon's technical knowledge was gained first-

22   hand.  In that respect the spousal communication privilege does not attach in the first

23   instance, because it applies only to communications *with a spouse*, not to Mr. Carreon's

24   own conduct. 81 Am. Jur. 2d Witnesses § 312 & n.5 ("Acts do not become privileged

25   communications simply because they are performed in the presence of the actor's

26   spouse." (citing *United States v. Estes*, 793 F.2d 465 (2d Cir. 1986)).

27       **C.   Any privilege that may have attached has been waived.**

28       The privileges asserted by Mr. Carreon are subject to waiver.  *Martin*, 278 F.3d at

12

1  1000 (attorney client privilege); *United States v. Figueroa-Paz*, 468 F.2d 1055, 1057 (9th

2  Cir. 1972) (marital communication privilege).  To the extent plaintiff seeks to depose Mr.

3  Carreon on the subjects of the discovery that he prepared, Mr. Carreon (or alternatively,

4  American Buddha) has already waived any privilege that may have attached.

5          **D.      The subpoena is not burdensome and Mr. Carreon's prior deposition is
                     no substitute.**

6

7          Mr. Carreon argues that any deposition would be burdensome because he already

8  testified in a prior litigation regarding "whether his e-publishing activities through

9  Amazon.com's 'KDP' desktop publishing system could somehow provide a basis for

10  showing income to American Buddha for jurisdictional purposes."  Motion at 3.  That

11  prior deposition, which was limited to whether American Buddha generated income in

12  New York, certainly did *not* concern the actual merits of defendant's activities, the

13  subject of present discovery.

14          **E.      Mr. Carreon has been aware of plaintiff's plan to depose him for
                     weeks.**

15

16          Finally, Mr. Carreon argues that the deposition is burdensome because he is

17  subpoenaed on, in his telling, short notice.  Counsel for plaintiff confirmed in writing

18  attempts to schedule Mr. Carreon's deposition on September 11, 2014.  These attempts to

19  schedule depositions, including Mr. Carreon's, went on for eight days, it now becomes

20  evident because of the constraints of Mr. Carreon, not the defendant.  Only at that time

21  did counsel indicate he was not going to attempt to schedule Mr. Carreon.  Mr. Carreon

22  was then personally provided notice of his deposition on September 23, 2014.  Mr.

23  Carreon never responded to plaintiff's counsel's communications, and accordingly, in an

24  abundance of caution, plaintiff subpoenaed Mr. Carreon for the date and time in the prior

25  notice.[3]

26  _____

[3] On September 29, defendant's counsel reported that Mr. Carreon "has contacted me to
advise that he has no availability at all until November."  Bosworth Dec. Ex. 1.  (Mr.
27  Carreon never responded to plaintiff's counsel, however.)  Mr. Carreon now declares that
he will attend the 30(b)(6) deposition, which will be held on October 7.  Carreon Decl. ¶
28  16.  It is clear that Mr. Carreon does, in fact, have availability within the timeframe that

13

1    Mr. Carreon has signed several certificates of service delivered to defendant.

2    Bosworth Decl. ¶ 5.  He has stated that he is the best source of discoverable information,

3    and he has communicated with plaintiff solely through defendant's counsel.  Indeed, for

4    the purposes of this litigation with all of his technical and operational actions,

5    Mr. Carreon is a "managing agent" of American Buddha.  Notice alone to Mr. Carreon

6    was sufficient to compel his deposition.  *See Calderon v. Experian Information Solutions,*

7    *Inc.*, 287 F.R.D. 629, 631 (D. Idaho 2012) (holding that managing agents of corporate

8    parties are susceptible to deposition by notice).

9

10    The Ninth Circuit has not, apparently, had occasion to address
      the standards under which a corporate employee will be
      determined to be a "managing agent." However, courts

11    around the country take largely consistent approaches, and
      consider the following factors: "(1)whether the individual is

12    invested with general powers allowing him to exercise
      judgment and discretion in corporate matters; (2) whether the

13    individual can be relied upon to give testimony, at his
      employer's request, in response to the demand of the

14    examining party; (3) whether any person or persons are
      employed by the corporate employer in positions of higher

15    authority than the individual designated in the area regarding
      which information is sought by the examination; (4) the

16    general responsibilities of the individual *respecting the
      matters involved in the litigation.*

17

18    . . .

19    [V]irtually all courts and commentators agree that the
      question of whether a particular person is a 'managing agent'

20    is to be answered pragmatically, on an ad hoc basis,
      considering the facts of the particular case.  Further, at least

21    where the question is whether the deposition should occur, as
      opposed to whether the corporation may ultimately be bound

22    by the employee's statements, . . . . the witness's likely
      "identification with the interests of the employer"—is said to

23    be the "paramount test."

24    *Id.* at 632 (citation omitted) (emphasis in original).[4]  The burden of establishing an

25    plaintiff sought to depose him.

26    [4] Notably, while the *Calderon* court frequently used the word "employee," the deponents
      at issue in that case were *not* employees of the defendant corporation.  Instead, they were

27    employed by a "sister corporation."  Accordingly, the inquiry does not turn on a technical
      "employment" relationship.  *See also Symantec Corp. v. Acronis, Inc.*, No. 11-CV-5310

28    EMC (JSC), 2013 WL 503612 at *1 (N.D. Cal. 2013) (finding that individual deponents

14

1    individual's status as a managing agent is modest, and all doubts are to be resolved in

2    favor of the party seeking the depositions.  *Id.* at 633 (citations omitted).  Ultimately,

3    when considering whether an individual is a "managing agent" subject to deposition by

4    notice, the question "is not so much the title or status of an individual within the

5    corporation, but his or her duties and responsibilities respecting the subject matter of the

6    litigation that is important."  *Id.* at 634.

7         Here, Mr. Carreon has told this Court that he is the best source for discoverable

8    information, including American Buddha's technical operation of the websites, the legal

9    positions publicly taken with other publishers, and complaints received from other

10   publishers.  The *Calderon* test is met.  Mr. Carreon's statements that Ms. Carreon is

11   remarkably uninformed show he is invested with general powers allowing him to exercise

12   judgment and discretion on behalf of American Buddha.  He can certainly be relied upon

13   to give testimony on behalf of American Buddha, and per his own statements, there are

14   no other individuals more qualified.  He is directly involved "respecting the matters

15   involved in the litigation," and most importantly, will clearly align himself with the

16   interests of American Buddha.

17        Plaintiff is not attempting to "harass" Mr. Carreon, Carreon Decl. ¶ 18.  Plaintiff

18   has understood that Mr. Carreon was a party deponent, certainly since the September 11

19   confirmation of depositions to be taken.  Both Mr. Carreon and defendant's counsel have

20   known that plaintiff wished to take Mr. Carreon's deposition since as early as September

21   11, 2014, when counsel for plaintiff stated specifically that plaintiff "would like to take

22   the depositions of Tara Carreon, Charles Carreon, and a Fed. R. Civ. P. 30(b)(6)

23   witness."

24        Tellingly, counsel's response to that message was "Send the 30(b)(6) notice then

25   the client can figure out who would be best."  But if Tara Carreon is the *only* individual

26   capable of giving a corporate deposition (i.e. she is the only individual who is an "officer,

27   ─────────────────────────────

      were managing agents of defendant despite the fact that they were not employees of

28   defendant).

15

1    director, *or managing agent*") of defendant, then there would have been no need for the

2    client to determine "who would work best."  Indeed, it was not until eight days after this

3    initial discussion, on September 19, 2014, that counsel first stated that "Mr. Carreon is

4    not a party witness, will not be designated to testify concerning any of the specified

5    matters, and has not agreed to be deposed by Penguin."  Then, on September 23, 2014,

6    counsel for plaintiff communicated *directly* with Mr. Carreon, at the email address

7    provided by counsel.  Mr. Carreon simply never responded.  His assertions that the

8    deposition was "blindly scheduled," motion at 4, is not supported by the record.

9         Plaintiff understands that Mr. Carreon says that he cannot be available for

10   deposition on October 8, 2014.  Plaintiff asks that Mr. Carreon's deposition should be

11   taken, as described, that Mr. Carreon should advise of his availability within the next two

12   weeks, and that the discovery cutoff be extended for that time solely with regard to Mr.

13   Carreon's deposition.

14        DATED this 6th day of October, 2014.

15                          DAVIS WRIGHT TREMAINE LLP

16

17                          By: s/ Duane A. Bosworth
                                 Duane A. Bosworth, OSB #825077
18                               Tim Cunningham, OSB #100906
                                 Of Attorneys for Plaintiff *Pro Hac Vice*
19

20                          **CERTIFICATE OF SERVICE**

21        I hereby certify that on October 6, 2014, I electronically transmitted the foregoing
     document and any attachments to the U.S. District Court Clerk's Office using the
22   CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the
     following CM/ECF registrants.
23

24             John Sullivan
               Attorney at Law
25             10857 Kling Street
               North Hollywood, CA 91602
26

27                          s/ Duane A. Bosworth

28

16