Duane A. Bosworth, OSB #825077
Tim Cunningham, OSB #100906
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
Facsimile:  (503) 778-5299
duanebosworth@dwt.com
timcunningham@dwt.com
Telephone:  (503) 241-2300

Attorneys for Plaintiff
*Pro Hac Vice*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Penguin Group (USA) Incorporated,<br><br>               Plaintiff,<br><br>     v.<br><br>American Buddha,<br><br>               Defendant. | Case No. CV-13-02075-TUC-JGZ<br><br>**Plaintiff's Motion for Summary Judgment and Supporting Memorandum of Law**<br><br>**Oral Argument Requested** |
|---|---|

**MOTION**

Pursuant to Fed. R. Civ. P. 56, Plaintiff Penguin Group (USA), Inc. ("Penguin") moves for summary judgment on its claim for copyright infringement against defendant American Buddha.  There is no genuine issue of material fact and plaintiff is entitled to judgment as a matter of law.

**MEMORANDUM OF LAW**

American Buddha, without permission, scans Penguin's copyrighted books, literally from cover to cover, and publishes the entirety of these books on the Internet for anyone in the world to read.  This prima facie infringement is not itself disputed.  Instead, American Buddha contends that its actions are permitted because it is a "library," and its

1

actions are somehow allowed by 17 U.S.C. § 108, or because its actions constitute "fair use" and are somehow allowed by 17 U.S.C. § 107.  An analysis of these contentions demonstrates they are without merit as a matter of law.  No person and no entity— "library" or otherwise—may lawfully engage in the conduct engaged in by American Buddha:  copying the entirety of plaintiff's copyrighted books and publishing those copies on the Internet, for the world to read.

## I.     FACTUAL BACKGROUND

American Buddha operates two websites, www.naderlibrary.com and www.american-buddha.com ("Websites").  Statement of Facts[1] ("SOF") 9.  Each of the Websites contains complete copies of four of plaintiff's copyrighted works:  *Oil!* by Upton Sinclair and *It Can't Happen Here* by Sinclair Lewis; and two new translations: E. J. Kenney's translation of *The Golden Ass* by Apuleius and R.E. Latham's translation of *On the Nature of the Universe* by Lucretius, (the "Works"), which are available in their entirety to anyone accessing either or both Websites.  SOF 1-6, 9-10, 14-15.

To place the Works on the Websites, American Buddha first removes all pages from the binding of a physical book, scans the physical pages and the cover to make the first copy, creates a second copy by running an OCR program that recognizes the text of the Works from the scan, and then copies that into an .htm file, a third copy.  SOF 13.  The third copy is then itself duplicated and one copy each is placed on each Website.  *Id.*  Other, backup copies are maintained on at least six computers and hard drives.  SOF 24.  American Buddha's purpose and intent is to distribute the Works on its Websites, SOF 16, that is, to "lend" its copies of plaintiff's Works.  SOF 18.

The Works are freely available to the public on each Website, and are easily found by major search engines.  SOF 10, 19.[2]  In fact, defendant works very hard to draw

---

[1] A complete statement of facts is concurrently submitted.

[2] The nature of the Websites and the availability of the Works is also subject to judicial notice.  *See Demer v. IBM Corp. Ltd. Plan*, 975 F. Supp. 2d 1059, 1081 at n.9 (D. Ariz. 2013) (taking judicial notice of website where its authenticity was not disputed by the parties).

2

attention to the Works and to all works on its Websites, so that users will look at them. SOF 19. Users may read the entirety of the Works on the Websites, and may save or print the entirety of a Work or Works from the Websites. SOF 20, 22. Penguin owns publication rights in each of the Works, actively markets and sells each of the Works, and has not authorized American Buddha to publish the Works on the Websites. SOF 1-4, 7-8.

## II.     ARGUMENT

### A.     Defendant has not disputed plaintiff's prima facie case.

Summary judgment is appropriate if the pleadings and supporting documents "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Wolf v. Sierra Vista*, No. CV-13-00114-TUC-JGZ, 2014 WL 2885480 at *3 (D. Ariz. June 25, 2014) (stating full standard).

The parties' Joint Statement demonstrates that plaintiff's prima facie case of infringement is not disputed. Dkt. # 102. Defendant did not raise therein any question about either plaintiff's ownership or defendant's copying, and had not raised any such issue in the previous twelve months of this matter. In the Joint Report, under "The Nature of the Case," defendant raised affirmative defenses to infringement, only. Similarly, with regard to the Joint Report section regarding what is to be proven in this matter, defendant raised only affirmative defenses. In the section on "Factual and legal issues genuinely in dispute," defendant raised affirmative defenses only. Defendant has not raised any issues regarding plaintiff's copyright ownership, nor has defendant raised any issue that its actions infringe plaintiff's Works in the first instance, absent an affirmative defense. Instead defendant argues that §§ 107 and 108 of the Copyright Act permit its actions. For the purposes of this motion, of course, plaintiff presents herein a prima facie case of both ownership and infringement.

### B.     American Buddha infringes Penguin's exclusive rights.

17 U.S.C. § 106 provides to the copyright owner the exclusive rights of

3

1 reproduction, distribution and display of its copyrighted works. To establish copyright
2 infringement, a plaintiff must prove: (1) ownership; and (2) unauthorized copying, here
3 in the form of reproduction, distribution and display. Penguin is the holder of the
4 copyrights in the Works and is entitled to enforce these rights. 17 U.S.C. § 201(d); SOF
5 1-8. American Buddha's Websites, which it calls its "online library," infringe Penguin's
6 reproduction rights, its distribution rights and its display rights. Infringement of *any one*
7 of these exclusive rights with regard to *any* Work entitles plaintiff to bring an action for
8 infringement. 17 U.S.C. § 501. Penguin seeks an injunction prohibiting defendant's
9 actions, "to prevent or restrain infringement of a copyright." 17 U.S.C. § 502.

10       **1.    American Buddha infringes Penguin's reproduction right.**

11     American Buddha's publication of the Works on its Websites infringes Penguin's
12 reproduction right. The Copyright Act establishes Penguin's exclusive right to
13 "reproduce the copyrighted work in copies." 17 U.S.C. § 106(1). "Copies" are "material
14 objects … in which a work is fixed by any method now known or later developed." 17.
15 U.S.C. § 101. Defendant does not dispute that it physically scans Penguin's Works and
16 places the resulting text into .html pages that users read, and may save or print, from
17 either or both Websites. SOF 13-15. Defendant also makes multiple *additional* copies of
18 each Work, placing six copies on other computers and on backup media. SOF 24. Each
19 copy constitutes a discrete infringement. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, --- U.S.
20 ---, 134 S. Ct. 1962, 1969, 188 L. Ed. 2d 979 (2014).

21     Scanning a work to create a digital copy infringes the copyright owner's
22 reproduction right. In *Advance Magazine Publishers, Inc. v. Leach*, 466 F. Supp. 2d 628
23 (D. Md. 2006), plaintiff alleged that "Defendant violated its exclusive right to reproduce
24 the publications by scanning into electronic form the text, original illustrations, and cover
25 art of its publications." *Id*. at 638. The court easily found a violation of the owner's
26 exclusive reproduction right, holding that "[a]lthough Defendant used a scanner to create
27 a digital copy of a work, rather than a photocopier to print a physical copy, the methods
28 of copying are equivalent and they are both infringing. A digital copy made without the

1  owner's permission is copyright infringement." *Id.*

2  Similarly, in *Society of Holy Transfiguration Monastery, Inc. v. Gregory*, where "identical or near-identical reproductions of the Monastery's Works had been reproduced and 'were available on [defendant's] Website,'" the court held that "there is no genuine issue of material fact as to whether the Archbishop ***reproduced*** and displayed exact or near-exact copies of the Monastery's Works." 689 F.3d 29, 49 (1st Cir. 2012) (emphasis supplied), *cert. denied*, --- U.S. ---, 133 S. Ct. 1315, 185 L.Ed.2d 195 (2013);[3] *see also New York Times Co., Inc. v. Tasini*, 533 U.S. 483, 488-91, 498 (2001) (online database allowing users to "view, print, or download" individual articles infringed both reproduction and distribution rights of copyright owners).

The facts here are indistinguishable from *Leach* and *Gregory*. American Buddha scans Penguin's Works in their entirety, including the text, illustrations and cover art, and places the resulting copies on its Websites, as in *Leach*. The copies are "identical or near-identical reproductions" of Penguin's Works, as in both decisions. They infringe Penguin's exclusive reproduction right.

### 2. American Buddha infringes Penguin's distribution right.

American Buddha's publication of Penguin's copyrighted Works on the Websites infringes Penguin's distribution right. The Copyright Act provides in pertinent part the exclusive right to "distribute copies … of the copyrighted work to the public by … lending." 17 U.S.C. § 106(3). American Buddha's publication of the Works on the Websites constitutes distribution.

American Buddha states within its Websites that it "makes available" Penguin's Works on those Websites. SOF 16. In fact, its specific intent is to place works on its website *so that others can read them.* SOF 16-19. Making a work available infringes an

---

[3] *Gregory* also held that text on a website is sufficiently "fixed" to constitute a "copy" under the Act. 689 F.3d at 55 ("The copies also were embodied or 'fixed' in a tangible medium of expression,' as they were loaded on the Archbishop's computer server and posted to his Website.").

5

1  owner's distribution right.  *E.g. Interscope Records v. Duty*, 2006 WL 988086 at *2 (D.
2  Ariz. April 14, 2006) (holding that the distribution right is synonymous with publication,
3  which includes an offer to distribute); *Advance Magazine Publishers, Inc. v. Leach*, 466
4  F. Supp. 2d 628, 638 (D. Md. 2006) ("Defendant operates what is essentially an online
5  database of literary works, and by making available unauthorized copies of plaintiff's
6  publications, he has infringed its right to distribution."); *New York Times Co., Inc. v.*
7  *Tasini*, 533 U.S. 483, 488-91, 498 (2001) (online database allowing users to "view, print,
8  or download" individual articles infringed both reproduction and distribution rights of
9  copyright owners); *see also* 2 Melville Nimmer & David Nimmer, Nimmer on Copyright
10 § 8.11[B] [4][d] at 8–154.10 (2013) ("No consummated act of actual distribution need be
11 demonstrated … to implicate the copyright owner's distribution right.").

12     In *Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199 (4th Cir.
13 1997), the defendant Church operated a library that made unauthorized copies of the
14 Hotalings' copyrighted works on microfiche.  *Id.* at 201-02.  Plaintiffs alleged that the
15 Church infringed their distribution right "by distributing unauthorized copies of their
16 works to the public."  *Id.* at 203.  Because the libraries did not keep any records of
17 microfiche lending, however, "the record [did] not contain any evidence showing specific
18 instances within the limitations period in which the libraries loaned the infringing copies
19 to members of the public."  *Id.* The Church countered that in order to establish
20 distribution, the evidence would have to show that someone actually browsed the
21 microfiche.  *Id.*  The Fourth Circuit disagreed, however, holding that:

> When a public library adds a work to its collection, lists the work in its index or catalog system, and makes the work available to the borrowing or browsing public, it has completed all the steps necessary for distribution to the public. At that point, members of the public can visit the library and use the work. Were this not to be considered distribution within the meaning of § 106(3), a copyright holder would be prejudiced by a library that does not keep records of public use, and the library would unjustly profit by its own omission.

*Id.*  In this matter, defendant has asserted that it cannot tell what or how many users have

6

1  viewed the Works on the Websites. SOF 29. Defendant has by its own description made
2  the work available to the public, completing all steps necessary for distribution to the
3  public. In fact, just as in *Hotaling*, it is defendant's testimony that as a library, it placed
4  two copies of the Works on its Websites, included the copies in its index system, and in
5  its own words made the copies available to the public. SOF 12-16. Moreover, it worked
6  diligently to bring the Works on its Websites to the public's attention. SOF 19.

7        That American Buddha's Websites make copies of the Works available to anyone
8  with an internet connection establishes a violation of Penguin's distribution rights, under
9  *Hotaling*, the *Nimmer* treatise, and other decisions. In *Atlantic Recording Corp. v.*
10 *Howell*, 554 F. Supp. 2d 976 (D. Ariz. 2008), Judge Wake concluded that evidence of
11 receipt of a copy—not just making a copy available—was required to establish liability
12 under 17 U.S.C. § 106 (3) where the plaintiff alleged unlawful "file sharing." *Id.* at 983-
13 84. The court did find, however, that plaintiff's agent's receipt of unauthorized copies
14 from defendant *would have been sufficient* to establish liability, *except* that an issue of
15 fact existed regarding whether defendant was responsible for making the unauthorized
16 copies available; defendant swore that *he* did not place the copyrighted works in a place
17 to be made available to others; that someone else may have done so; and that a computer
18 program may have made the unauthorized copies available without his authorization.
19 There is no such question of responsibility or intention in this matter, however.
20 Moreover, third parties have *in fact* received unauthorized copies from defendant. SOF
21 30, 31. Even the rule established in *Howell* would find infringement by distribution
22 here.[4]

---

[4] Moreover, the facts here are far more similar to *Hotaling* than to *Howell*. American Buddha holds itself out as a library—not as an individual running a file sharing program. *See Diversy v. Schmidly*, 738 F.3d 1196, 1202 n.7 (10th Cir. 2013) (applying *Hotaling*, not *Howell*, where case concerned a library, not a file-sharing site, because "[a] patron could visit the library and use the work. This is the essence of a violation of the copyright owner's exclusive right to distribute his work via lending." (internal quotation marks omitted) (citing *Hotaling*)). The record here is replete with evidence that it has been defendant's constant intention to distribute copies of the Works, unlike in Howell. And Penguin has established that defendant actually distributed the Works. SOF 31-32.

### 3. American Buddha infringes Penguin's display right.

American Buddha's publication of the Works on the Websites violates Penguin's display rights. The Copyright Act provides exclusive rights for the copyright owner of a literary work to "display the copyrighted work publicly." 17 U.S.C. § 106(5).

> [T]he important function of the display right with respect to literary … works … can be found in its application to the transmission of the manuscript or printed version of such works so that they may be read by electronic means on cathode ray tubes or otherwise through computer technology.

2 Nimmer on Copyright § 8.20[A].

"To 'display' a work means to show a copy of it, either directly or by means of a film, slide, television image, *or any other device or process*." 17 U.S.C. § 101 (emphasis supplied). As discussed above, American Buddha shows copies of Penguin's works via its Websites. *See Playboy Ents., Inc. v. Frena*, 839 F. Supp. 1552, 1557 (M.D. Fla. 1993) ("The display right precludes unauthorized transmission of the display from one place to another, for example, by a computer screen."); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1161 (9th Cir. 2007) (display of copyrighted photos on a website constituted prima facie case of display right infringement). Finally, display on websites constitutes a "public" display within the Copyright Act.

> [Defendant] "display[ed]" the Works publicly—that is, he "show[ed] a copy of" the Works "by means of a ... device or process," 17 U.S.C. § 101—when he posted the Works on his website. Although the question of whether a computer has "displayed" a copyrighted work may be a difficult one in other contexts, it is beyond question here that [defendant] has "displayed" the Works on his website. We need not delineate the outer bounds of the scope of the term "display" where, as here, the fact that the Works were "displayed" on the [defendant's] website is undisputed.

*Gregory*, 689 F.3d at 55 (internal citation omitted); *see also Leach*, 466 F. Supp. 2d at 637 ("Defendant's posting of Plaintiff's publications on his websites infringe Plaintiff's right of display.").

---

Penguin's witness was able to read, print, and save each of the Works from American Buddha's Websites. *Id.* Even under *Howell,* that establishes infringement of the distribution right. 554 F. Supp. 2d at 985.

8

1  Again, infringement of any *one* of plaintiff's reproduction, distribution, or display
2  rights entitles plaintiff to bring this action.

### C. American Buddha's conduct is not protected by sections 107 or 108 of the Copyright Act.

Plaintiff anticipates that American Buddha will argue that its conduct is excused by either or both sections 107 of the Copyright act (fair use) or 108 (library exception).[5] These affirmative defenses—which American Buddha bears the burden of establishing— do not authorize American Buddha's prima facie infringement of Penguin's Works.

#### 1. Defendant's publication of Penguin's copyrighted Works is not fair use.

Fair use requires the court to "look to the nature and objects of the selections made, the quantity and value of the materials use, and the degree in which the use may prejudice the sale, or diminish the profits, or supersede the objects, of the original work." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 576 (1994) (quoting the common law formation). American Buddha reproduces, distributes and displays Penguin's Works in their entirety on its Websites. Defendant's prima facie infringement is not authorized as fair use.

##### a. First factor: defendant's use is non-transformative.

The first fair use factor requires evaluation of "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. §107(1). This factor focuses on "whether the new work merely supersedes the objects of the original creation, or whether and to what extent it is 'transformative.'" *Campbell*, 510 U.S. at 1166.

Here, American Buddha creates complete copies of the Works, and "[t]here is little transformative about copying the entirety or large portions of a work verbatim." *L.A. Times v. Free Republic*, No. CV 98-7840 MMM (AJWx), 2000 WL 565200 at *6

---

[5] Defendant has, at various times, suggested that it will advance a common law copyright exemption for libraries as an affirmative defense. Despite repeated requests, defendant has not provided any explanation of the meaning or scope of any such exemption.

1    (C.D. Cal. April 4, 2000), cited with approval by *A&M Records v. Napster*, 239 F.3d
2    1004, 1017 (9th Cir. 2001).   The purpose and character is identical—to allow readers to
3    read the identical literary works.  *Id.*

4           American Buddha's "non-profit" status does not tip the first factor in its favor.
5    *See Campbell*, 510 U.S. at 584 ("[T]he mere fact that a use is educational and not for
6    profit does not insulate it from a finding of infringement."); *Worldwide Church of God v.*
7    *Philadelphia Church of God*, 227 F.3d 1110, 1117-18 (9th Cir. 2000) (first fair use factor
8    weighed in favor of plaintiff despite non-profit status, where defendant copied entire
9    works for same purpose).  The relevant inquiry is not defendant's corporate form but
10   rather whether it "stands to profit from exploitation of the copyrighted material without
11   paying the customary price."  *Harper & Row Publ'rs, Inc. v. Nation Enters.*, 471 U.S.
12   539, 562 (1985).  Posting the Works attracts more users to the Websites, and it is
13   undisputed that defendant solicits and receives donations from the operation of the
14   Websites, and defendant seeks more viewers.  SOF 23.  *Cf. Los Angeles Times*, 2000 WL
15   at *12 "("[D]efendants … copy and post plaintiffs' news articles, which are then
16   available to others visiting the site free of charge.  Since the general purpose of the site is
17   to provide a forum where individuals can discuss current events and media coverage of
18   them, posting copies of plaintiffs' articles assists in attracting viewers to the site.").  This
19   factor weighs in favor of Penguin.

20                  **b.      Second factor:  the Works are literary works.**
21          The second factor is the nature of the copyrighted work.  17 U.S.C. §107(2).
22   Generally, "creative works are closer to the core of intended copyright protection than
23   informational and functional works."  *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*,
24   109 F.3d 1394, 1402 (9th Cir. 1997) (quotation omitted).  Here, each of the Works is a
25   creative literary work.  *Oil!* and *It Can't Happen Here* are fictional works entitled to the
26   highest level of protection.  *The Golden Ass* and *On the Nature of the Universe*, though
27   translations, "fall closer to the creative end of the spectrum than the informational or
28   factual end."  *Gregory*, 689 F.3d at 62.  This factor is in Penguin's favor.

### c. Third factor: defendant publishes the entirety of each Work.

The third factor is the "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. §107(3). "[T]he extent of permissible copying varies with the purpose and character of the use." *Campbell*, 510 U.S. at 586–87, 114 S. Ct. 1164. "While wholesale copying does not preclude fair use per se, copying an entire work militates against finding a fair use." *Worldwide Church*, 227 F.3d at 1118. "We have found no published case holding that fair use protected the verbatim copying, without criticism, of a written work in its entirety." *Id.* at 1120. Here, because American Buddha copies the entirety of each Work, the factor weighs decisively against fair use.

### d. Fourth factor: publication of the sort defendant engages in would significantly limit the market for the Works.

The fourth fair use factor is "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). The fourth factor is "undoubtedly the single most important element of fair use." *Harper & Row Publ'rs, Inc. v. Nation Enters.*, 471 U.S. 539, 566 (1985).

Importantly, under the fourth factor, courts "consider not only the extent of harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct *of the sort engaged in by the defendant* … would result in a substantially adverse impact on the potential market for the original." *Campbell*, 510 U.S. at 590 (emphasis added) (citation and internal quotation marks omitted); *see also Harper & Row* 471 U.S. at 568 ("[T]o negate fair use one need only show that if the challenged use 'should become widespread it would adversely affect the *potential* market for the copyrighted work.'" (quoting *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 484 (1984)) (emphasis in *Harper & Row*).

It is without question that if others were also to place complete copies of Penguin's books on their websites, there would be a substantially adverse impact on the potential market for the original. *Gregory*, 689 F.3d at 64. "If anyone could freely access the Works, electronically or otherwise, [Penguin] would have no market in which

to try and publish, disseminate or sell its [works]." *Id.* at 65.

None of the fair use factors favor defendant. Defendant copies the entirety of works of literature and places them on the internet for the world to read. This would become a genuine substitute for Penguin's works if widespread.

**2. The library exception, § 108 does not exempt American Buddha's conduct; nothing in the library exception allows concerted copying and distribution of entire works.**

Section 108 of the Copyright Act (the "library exception") provides certain specific exceptions to liability for reproduction and distribution of works undertaken by qualifying libraries or archives, but the library exception does not swallow owner's rights in any way. No library[6] can freely scan the entirety of copyrighted works and place copies on the Internet for all to see.

American Buddha has never indicated in any document, including the Joint Report, exactly which provision of the library exception purportedly covers its activity. Most clearly do not apply on their face, often because of but specifically not limited to defendant's failure to investigate or determine the availability of a reasonable replacement copy. SOF 34.

Plaintiff simply guesses that defendant will claim subsection (d) applies to its actions. Reliance on subsection (d) fails, however, because that section allows the copying and distribution of only a "small part" of a work. The record is clear that defendant copies and makes available *the entirety* of each Work. Moreover, American Buddha has *already* made the copies that it distributes to users, *before a request is ever made*. The language of the section clearly addresses a copy, or a "small part," being made only *after* a request is made. 17 U.S.C. § 108(d) ("where the user makes his or her request"). Defendant may argue that it only distributes individual chapters at each click, and that "individual chapters" constitute a "small part" of the work. In fact, defendant

---

[6] For the purposes of this motion only, Penguin assumes without agreeing that American Buddha is a "library" as that term is used in the Copyright Act; even if defendant *is* a library, its actions are not permitted by section 108.

1  has *already copied* and made available *every chapter* of each Work on its Websites.

2  Each Work is entirely available and in fact has been entirely reproduced and distributed.

3  SOF 31, 32.[7]

### D. Plaintiff is entitled to injunctive relief.

Defendant's continuing infringement of plaintiff's copyrights constitutes irreparable harm warranting a permanent injunction. *See* 17 U.S.C. § 502(a). "Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Arizona Dream Act Coalition v. Brewer*, -- F.3d ----, 2014 WL 3029759 at * 11 (9th Cir. 2014). Irreparable harm may be associated with an "intangible" injury—like one to reputation, *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc*., 944 F.2d 597, 603 (9th Cir 1991), or with other injuries that make damage calculation difficult. Defendant's ongoing infringement irreparably harms Penguin through inflicting difficult to measure reputational damage, through encouraging widespread infringement that cannot be remedied by damages, and by robbing Penguin of the right to control its intellectual property.

The presentation of the Works on the Websites falls far below Penguin's standards of presentation, damaging Penguin's reputation. American Buddha presents the text against a colored background; randomly bolds passages *not* bolded by the author; and inserts random images and commentary not included in the Penguin version of the Works. SOF 21, 39. This departure from Penguin's high standards damages Penguin's goodwill with its customers, including its readers and its distribution partners, and with authors who choose to publish with Penguin. SOF 38, 39, 40, 41. *Cf. Apple, Inc. v.*

---

[7] Additionally, section 108 does not excuse a library from violation of Penguin's display rights, in any event. Section 108 provides that "it is not an infringement of copyright for a library or archives … to **reproduce** no more than one copy or phonorecord of a work … or to **distribute** such copy or phonorecord … if (1) the **reproduction or distribution** is made [under specified conditions]." 17 U.S.C. §108(a) (emphasis supplied). The only mention of the display right in section 108 appears in subsection (h), but that applies, like other sections, only if it has been determined that a copy cannot be obtained at a reasonable price. That determination has not been, and could not be, made. SOF 34.

13

1  *Psystar Corp.*, 658 F.3d 1150, 1154 (9th Cir. 2011) (affirming grant of preliminary

2  injunction because damage to brand, business reputation and goodwill constituted

3  irreparable harm); *see also eBay v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1066

4  (N.D. Cal. 2000) ("Harm resulting from … lost customer goodwill is irreparable because

5  it is neither easily calculable, nor easily compensable and is therefore an appropriate basis

6  for injunctive relief.").

7  American Buddha's Websites subject Penguin's Works to potential infringement

8  without limit, allowing anyone with an internet connection to acquire Penguin's Works

9  for free.  SOF 10.  Unchecked dissemination of a copyrighted work renders it

10  "'vulnerable to continuing infringement on an enormous scale' that cannot be redressed

11  with money damages."  *Lions Gate Films, Inc. v. Does*, 2014 WL 3895240 at *6 (C.D.

12  Cal. Aug. 8, 2014) (citation omitted).  Defendant has testified that is has no records

13  concerning the distribution of the Works.  SOF 29.  Defendant has also repeatedly stated

14  that it has extremely limited resources.  SOF 35.  Both that a damage award would be

15  incalculable, and that American Buddha would be unlikely to satisfy an award, further

16  justify injunctive relief.  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F.

17  Supp. 2d 1197, 1216-18 (C.D. Cal. 2007).[8]

18  Injunctive relief is also appropriate because defendant has vehemently stated that

19  its infringement will not cease absent an injunction.  SOF 28.

20  > A plaintiff has no adequate remedy at law where, absent an injunction, the defendant "is likely to continue infringing" its copyright(s). *Warner Bros*., 575 F.Supp.2d at 553; *see SimplexGrinnell v. Integrated Sys*., 642 F.Supp.2d 167, 196–97 (S.D.N.Y.2009) (finding remedies at law inadequate where evidence suggested defendant would continue unauthorized use of copyright).  … No evidence exists in the record to suggest that Vergara has or will stop copying and selling the plaintiffs' ISMs. Hence, an award of monetary damages cannot adequately compensate the plaintiffs for the harm they

---

[8] Though it has no records, defendant may predict that there has been little distribution. But the relevant calculation for irreparable harm is the amount of infringement that *could occur* through the Websites if defendant's infringement is left unchecked. *Grokster*, 518 F. Supp. 2d at 1219.

14

have suffered.

*Person Educ. v. Vergara*, 2010 WL 3744033 at *4 (S.D.N.Y. Sept. 27, 2010). Defendant has testified it will continue its unauthorized use: "I'm not going to take them off. … This is a library. They're in the -- in the archive, that's it. You're not getting them off." SOF 28. Defendant acts without permission because it does not consider permission "a relevant parameter." SOF 28. Defendant has repeatedly responded to copyright holders' takedown requests with a bare assertion that it is a "library," and defendant has asserted that it will not cease its ongoing infringement. SOF 12, 28.

Finally, plaintiff asks the Court to permanently enjoin American Buddha from publishing *any* of Penguin's copyrighted works. The Ninth Circuit has recognized that "it is appropriate to permanently enjoin the future infringement of copyrighted works … even if not directly in issue because liability has been established between the parties, and the threat of harm through future infringement of [the other work] is real." *Apple, Inc. v. Psystar Corp.*, 658 F.3d 1150, 1161 (9th Cir. 2011)), citing *Walt Disney Co. v. Powell*, 897 F.2d 565, 568 (D.C. Cir. 1990) ("Where, as here, liability has been determined adversely to the infringer, there has been a history of continuing infringement and a significant threat of future infringement remains, it is appropriate to permanently enjoin the future infringement of works owned by the plaintiff but not in suit."). Here, defendants' Websites contain hundreds if not thousands of works, and defendant adds works consistently. Absent an injunction preventing infringement of all Penguin works, Penguin will be forced into repeated litigation to protect its exclusive rights.

DATED this 16th day of December, 2014.

DAVIS WRIGHT TREMAINE LLP

By: s/ Duane A. Bosworth
Duane A. Bosworth, OSB #825077
Tim Cunningham, OSB #100906
Of Attorneys for Plaintiff *Pro Hac Vice*

## CERTIFICATE OF SERVICE

1

   I hereby certify that on December 16, 2014, I electronically transmitted the foregoing document and any attachments to the U.S. District Court Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants.  .

2

3

4

5   John Sullivan
    Attorney at Law
6   10857 Kling Street
    North Hollywood, CA 91602
7

8              s/ Duane A. Bosworth
    _____

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28