1  Duane A. Bosworth, OSB #825077
   Tim Cunningham, OSB #100906
2  DAVIS WRIGHT TREMAINE LLP
   1300 S.W. Fifth Avenue, Suite 2400
3  Portland, Oregon  97201-5610
   Facsimile:  (503) 778-5299
4  duanebosworth@dwt.com
   timcunningham@dwt.com
5  Telephone:  (503) 241-2300

6      Attorneys for Plaintiff
       *Pro Hac Vice*

7

8

9

10

11            IN THE UNITED STATES DISTRICT COURT

12              FOR THE DISTRICT OF ARIZONA

13  Penguin Group (USA) Incorporated,

14                       Plaintiff,          Case No. CV-13-02075-TUC-JGZ

15      v.                                   **Plaintiff's Reply in Support of Motion
                                             for Summary Judgment**
16  American Buddha,

17                       Defendant.

18

19                I.      INTRODUCTION

20         In response to Penguin Group (USA) Incorporated ("Penguin")'s Motion for

21  Summary Judgment, Defendant concedes that Penguin has established that defendant

22  infringes Penguin's reproduction, display, and distribution rights in each of the four

23  Works in question; does not dispute Penguin's argument regarding its entitlement to

24  injunctive relief; and abandons its previous contention that its infringing activities are

25  protected by a "library exception" in 17 U.S.C. § 108, along with several other defenses it

26  previously claimed.  Defendant's only opposition to the Motion for Summary Judgment

27  is a claim that its use of the Works in question qualifies as a fair use under the Copyright

28  Act.

1

1    Defendant now asks this Court to become the first ever to find fair use where the

2    infringement in question consists of:  (1) the reproduction, distribution and display of the

3    *entirety* of lengthy copyrighted written works, together with (2) making the entirety of the

4    works *available to the world*.  No precedent remotely exists for such a finding.  Since

5    defendant's fair use defense lacks both legal and factual support and, as described *infra*,

6    defendant presents this Court with no genuine issue of material fact, Penguin respectfully

7    requests that this Court grant summary judgment in its favor as well as any other relief

8    that the Court may deem just and proper.

9                              **II.     ARGUMENT**

10   **A.    DEFENDANT DOES NOT RAISE ANY GENUINE ISSUE OF MATERIAL
            FACT.**

11

           **1.     Defendant does not identify any issue of material fact and defendant
12                  fails to comply with the Court's rules.**

13   Without analysis or detail, defendant summarily declares that genuine issues of

14   material fact preclude summary judgment.  Opposition, Dkt. 168 (hereinafter "Opp.") at

15   1, 18.[1]  This bald assertion is made in defendant's first paragraph and last paragraph only,

16   with no identification of any issue of material fact at any place in its argument.

17   Defendant also completely ignores LRCiv 56.1[2] and this Court's Order, Dkt. 104,

18   advising the parties to "*pay particular attention* to LRCiv 56.1(b)" (emphasis added).

19   That rule states:

20              Any party opposing a motion for summary judgment shall file
                a statement, separate from that party's memorandum of law,
21              setting forth:  (1) for each paragraph of the moving party's
                separate statement of facts, a correspondingly numbered
22              paragraph indicating whether the party disputes the statement
                of fact set forth in that paragraph and a reference to the
23              specific admissible portion of the record supporting the
                party's position if the fact is disputed; and (2) any additional
24

25   [1] Citations to defendant's "opposition" and Penguin's original Motion ("MSJ"), are to the
     docket page, not the page number listed on the documents.

26
     [2] Defendant also failed to comply with LRCiv 7.1(b)(1) (requiring all text, including
27   footnotes, to be in 13 point font).  When presented in compliance with LRCiv 7.1(b)(1),
     defendant's opposition is 21 pages long, exceeding the maximum allowed.  Cunningham
28   Decl. Ex 1.

DWT 26071104v1 0061270-000015

1
2
3
4
5
6

facts that establish a genuine issue of material fact or otherwise preclude judgment in favor of the moving party. Each additional fact shall be set forth in a separately numbered paragraph and shall refer to a specific admissible portion of the record where the fact finds support. Each numbered paragraph of the statement of facts set forth in the moving party's separate statement of facts shall, unless otherwise ordered, be deemed admitted for purposes of the motion for summary judgment if not specifically controverted by a correspondingly numbered paragraph in the opposing party's separate statement of facts.

7       Pursuant to LRCiv 56.1(b), defendant's failure to controvert any of Penguin's

8   statement of facts means that Penguin's facts are deemed admitted. In any event,

9   defendant does not identify any issues of fact in its memorandum.[3] With no material

10  facts at issue, fair use is a legal question that can be decided in summary judgment.

11  *Fisher v. Dees*, 794 F.2d 432, 436 (9th Cir. 1986).

12      **2.      Defendant's two declarations attempt to offer inadmissible evidence.**

13      The meager factual evidence that defendant does attempt to offer in its two

14  declarations accompanying its opposition lacks foundation, proffers opinion evidence of

15  lay witnesses, consists of hearsay, or makes legal conclusions couched as facts. A

16  complete list of objections to defendant's proffers is attached as **Appendix A**, in accord

17  with Fed. R. Civ. P. 56(c)(2)'s direction to avoid a separate motion to strike. Even *if*

18  defendant's submissions were admissible, and they are not, they do not create a genuine

19  issue of material fact where, as here, it is undisputed, as described herein, that defendant

20  makes available the verbatim entirety of Penguin's Works, to the world. *Cf. F.T.C. v.*

21  *Neovi, Inc.*, 604 F.3d 1150, 1159 (9th Cir. 2010) (self-serving, uncorroborated and

22  conclusory assertions in a declaration are insufficient to survive summary judgment).

23  **B.      DEFENDANT'S FAIR USE ARGUMENT FAILS AS A MATTER OF LAW.**

24      Defendant does not dispute that Penguin has established copyright infringement of

25  _____

[3] Most generously, defendant attempts to make one assertion of fact that differs from
26  Penguin's Statement of Facts. Defendant baldly asserts that a user "cannot" download an entire Work. Dkt. 168 at 10. That is flatly contradicted by SOF 20, 20, 22, 31 and 32, all
27  of which are supported by cited, admissible evidence. On investigation, Defendant's "cannot" means at most "is not supposed to." Defendant does not in any event dispute
28  that it makes available to the world the entirety of each Work.

DWT 26071104v1 0061270-000015

1    three exclusive rights:  reproduction, distribution, and display.  Defendant argues only

2    that its infringement is excused by the affirmative defense of fair use, which it has the

3    burden of establishing.  Defendant argues principally that the decision in *Cambridge*

4    *University Press v. Patton*, 769 F.3d 1232 (11th Cir. 2014), controls this case and

5    establishes fair use.[4]  The facts of the instant case, however, do not remotely resemble the

6    facts in *Cambridge*.  At issue in *Cambridge* was the publication of (1) *excerpts* of works,

7    only, (2) which were made available to a limited group of students enrolled in designated

8    courses in a public university, with access that terminated at the course's end.  Here, by

9    contrast, defendant's infringement—the copying of the entirety of Penguin's copyrighted

10   works, and making them available, verbatim, to the world—could never be deemed fair

11   use under the principles set forth in *Cambridge*.

   **1.    Fair use's first factor:  Defendant's use is non-transformative and defendant's purposes are not the same as in *Cambridge*.**

12

13        Defendant argues that its use of Penguin's Works is transformative because it has

14   scanned the text of the Works to create digital text that can be searched by third party

15   search engines.  Defendant contends that adding searchability always means an otherwise

16   infringing use is transformative.  That is wrong.  As the Second Circuit explained last

17   June, "a transformative work is one that serves a new and different function from the

18   original work *and is not a substitute for it*."  *Authors Guild, Inc. v. HathiTrust*, 755 F.3d

19   87, 96 (2d Cir. 2014) (emphasis added).  Defendant forgets this second, essential

20   requirement.  Squarely unlike all favorable searchability decisions, defendant *makes*

21   *available* the *entirety* of Penguin's works and therefore offers a complete substitute for

22   the infringed works.[5]  Defendant's use fails the second requirement that it not provide a

23   substitute for the original.

24        In *HathiTrust*, for example, cited overbroadly by defendant for the proposition that

25

---

26   [4] Actually, the court did *not* decide fair use, but instead remanded the matter.

27   [5]  It can occasionally be said that "the use of an entire work may be a fair use."  But the
     first "use" in that proposition relates to the *copying*, only, which is essential to create
28   searchability, *not* to the *making available* the entirety of a work to the world.

4

1    searchability itself establishes transformative use, the challenged database provided *page*

2    *numbers* only as search results, without *any* accompanying *text*.

3              Importantly, as we have seen, the HDL [HathiTrust Digital
          Library] does not allow users to view any portion of the
4              books they are searching. Consequently, in providing this
          service, the HDL does not add into circulation any new,
5              human-readable copies of any books.  …  Indeed, we can
          discern little or no resemblance between the original text and
6              the results of the HDL full-text search.

7    755 F.3d at 87.  Defendant in this case, on the other hand, makes available to the world

8    the *entirety* of each Work.  Defendant does not and cannot dispute that, contrary to the

9    facts in *HathiTrust*, users can "view any portion of the books they are searching," and

10   that its Websites "add into circulation new, human-readable copies" of Penguin's Works.

11   SOF ¶ 20; Tara Carreon Decl., Dkt. 168-1 ("Carreon Decl."), ¶¶ 19, 25.

12            Similarly, in the *Perfect 10* case, the Ninth Circuit found that the transformative

13   use consisted of *only* searchable images, not the original images *themselves*.  *Perfect 10,*

14   *Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1162 (9th Cir. 1007) ("Though Google indexes

15   these images, it does not have a collection of stored full-size images it makes available to

16   the public.").  And as the Ninth Circuit explained in *Kelly v. Arriba Soft*, 336 F.3d 811,

17   818 (9th Cir. 2003), the thumbnail images "were much smaller, lower-resolution images

18   that served an entirely different function than Kelly's original images."  *Copying* of the

19   entirety of an original work to create searchability may be permissible where what is

20   *made available* is not a substitute for the original.  Defendant, which provides the entirety

21   of each Work to the world, can make no such contention.

22            It bears noting that the searchability defendant touts is not the product of any tool

23   defendant offers.[6]  Moreover, as defendant itself concedes, *each* of the four Works is

24   _____

[6] Despite that establishing fair use is defendant's burden, defendant has failed to submit
25   any evidence on the operation of its purported "search function."  If it had, it would
explain to the Court that any visitor to defendant's site would use a third-party tool called
26   "SiteComber," which is "a Google powered search tool" that allows users to search
"within one particular website."  http://sitecomber.com/pgs/about/; *see also*
27   http://american-buddha.com/searchambu.htm (showing that searches are performed with
"SiteComber.").  When a user runs a search on American-buddha.com/searchambu.htm,
28   the results are provided *by SiteComber*.  Defendant has created the Websites and a
separate, third-party tool searches the Websites.  Simply creating a website or certain

DWT 26071104v1 0061270-000015

1    *already* fully searchable on Google Books, which provides snippets only, not full text.

2    Carreon Decl., ¶ 35.  Defendant's scanning of the full texts actually offers *no* new

3    searchability that isn't already offered,[7] and in fact it offers less:  for whatever reason,

4    defendant has simply eliminated all page numbers from the scanned works, making

5    actual scholarly citation impossible.  *See* MODERN LANGUAGE ASS'N OF AM., MLA

6    STYLE MANUAL AND GUIDE TO SCHOLARLY PUBLISHING 167 (3d Ed. 2008).

7          Defendant's occasional assertions that its Websites are somehow not suitable for

8    reading the Works online cannot be credited; defendant itself contradicts them.  Ms.

9    Carreon herself declares that an advantage to accessing works online is *that they are easy*

10   *to read*.  Carreon Decl. ¶ 19 ("I was therefore pleased to find that the fonts on the Internet

11   could usually be scaled up, and so *I could read virtually any book easily*.  The screen

12   provided all of the illumination I needed." (emphasis added)); *id.* at ¶ 25 ("Because I

13   came to enjoy reading off of the computer screen *much more than* I ever had when

14   reading off the page, I started scanning more books *simply to be able to read them.*"

15   (emphasis added)).  The unfounded opinion that users do not access the Works "simply to

16   be able to read them" is not supportable.

17         Finally, as discussed in Penguin's opening brief, MSJ at 10, defendant's status as a

18   "non-profit" is not dispositive.  Defendant does not dispute that it solicits donations on its

19   Websites, that it seeks to promote its Websites through the availability of the Works, or

20   that it specifically offered to "restore" certain works in exchange for a donation.  SOF 16,

21   19, 23.  Defendant is like the monastery in *Society of Holy Transfiguration Monastery,*

22   *Inc. v. Gregory*, 689 F.3d 29, 64-65 (1st Cir. 2012), which despite failing to generate any

23   actual income, stood to gain recognition through posting full copies of copyrighted works

24   _____

        documents that are searchable by other tools is not a transformative use.  Following
25      defendant's logic, *any one* may scan and copy verbatim the entirety of *any* work, because
        the "scan" allows third party "transformative" searchability.  That is not the law of
26      copyright.  Among other things, it ignores the essential analysis of substitution and
        supplanting.
27
        [7] The sole exception might be that the idly curious might wonder how often a word
28      comes up in defendant's highly circumscribed, erratically "curated" collection of books.

                                            6

1    on the internet.  Nor does defendant demonstrate "educational purpose," as in

2    *Cambridge*.  Indeed, defendant's "educational purpose" is not merely diluted but is

3    suspect.  As defendant accurately and succinctly states, "[t]he purposes of American

4    Buddha are to fulfill political, social, and religious goals …."  Carreon Decl., ¶ 41; Opp.

5    p. 11.  Defendant attempts to fulfill this purpose by making the entirety of works

6    available to the world, not by providing excerpts to a stringently defined group of

7    students enrolled in courses using those excerpts for class purposes, with access

8    terminating at the end of the course, as in *Cambridge*.  The first factor does not favor

9    defendant.[8]

10       **2.      Factor two:  The Works are literary works entitled to full protection.**

11       As discussed in Penguin's Motion for Summary Judgment, the Works are creative

12   literary works entitled to the highest level of copyright protection.  As cited previously,

13   this applies to the two translations, also.  MSJ at 10.  Defendant's anti-intellectual

14   argument that translation is mechanical, and services can be obtained cheaply online,

15   belies all of defendant's pretensions to assisting genuine scholarship.  This factor is

16   against defendant.

17       **3.      Factor three:  Defendant uses the *entirety* of each Work.**

18       Defendant's argument regarding the third factor relies on the unsupported

19   proposition that the amount of the work "used" depends on the amount that *viewers* have

20   viewed on the Websites.  Opp. at 14.  Defendant is wrong.

21       17 U.S.C. § 107 states clearly that the third factor considers "the amount and

22

---

23   [8] Defendant separately argues that it undertook its copying with the "intent" to aid the
     print-disabled, which supports fair use.  Tara Carreon declares, however, that "I became
24   aware of the value of websites that work well with screen readers *after this litigation
     began*."  ¶ 38 (emphasis added).  In addition, the argument defendant attempts to make
25   applies only when works are "reproduced or distributed in specialized formats
     *exclusively for use by blind or other persons with disabilities*."  17 U.S.C. § 121(a)
26   (emphasis added).  In *HathiTrust*, infringement by making works available to the print
     disabled was excused only where an individual patron submitted documentation
27   certifying disability and requesting full text access, and where the patron was affiliated
     with a particular library that enforced such restrictions.  755 F.3d at 101.  Defendant has
28   no such restrictions and makes full text infringements available to the world.

7

1    substantiality of the portion *used* in relation to the copyrighted work as a whole."

2    (Emphasis added).  The "portion used" in 17 U.S.C. § 107 clearly refers to the *infringer's*

3    use.  *Cf. Los Angeles News Serv. v. Tullo*, 973 F.2d 791, 797 (9th Cir. 1992) (noting that

4    where plaintiff sued for direct copyright infringement, when analyzing the "character of

5    the use," the "ultimate use to which the customer puts the tape is irrelevant").  Defendant

6    attempts to rely on *Cambridge* for defendant's novel proposition, Opp. at 14 n. 20, but

7    omits that court's characterization of the third factor as examining "whether *defendants*

8    have 'helped themselves overmuch' of the copyrighted work in light of the purpose and

9    character of the use." 769 F.3d at 1271 (emphasis added) (citation omitted).  It is

10   undisputed, as the Statement of Facts demonstrates, that defendant makes available the

11   entirety of Penguin's lengthy works, that anyone can read the entirety of any Work, as

12   SOF 31 confirms has been done, and indeed that anyone can print the entirety.

13   Defendant copies, makes available, and "uses" the entirety of each Work.  This factor is

14   strongly against defendant.

15       **4.      Fourth factor:  Defendant's use, if allowed, would substantially harm
             the market for the Works.**
16
         Despite defendant's argument to the contrary—belatedly attempting to claim that
17
     not many people have viewed the Works on defendant's Websites[9]—courts "consider not
18
     only the extent of harm caused by the particular actions of the alleged infringer, but also
19
     whether unrestricted and widespread conduct of the sort engaged in by defendant …
20
     would result in a substantially adverse impact on the potential market for the original."
21
     *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994) (emphasis added) (citation
22
     omitted).  Where, as here, the infringing use "supplants or supersedes another [it] is likely
23
     to cause a substantially adverse impact on the potential market of the original."  *Sony*
24
     *Computer Entm't, Inc. v. Connectix Corp.*, 203 F.3d 596, 607 (9th Cir. 2000) (citing
25

26   ─────────────────
     [9] Defendant's "evidence" purports to show that very few people view the Works on the
     Websites.  This evidence was produced *after* the discovery cutoff in this case, and *after*
27   Ms. Carreon swore under oath that *no* such statistics were available.  *See* **Appendix A**.
     The material provided does not establish what defendant claims in any event.  *Cf*.
28   Carreon deposition, pp. 36-37.

8

1    *Campbell*, 510 U.S. at 591).  Defendants argue they are permitted to scan the entirety of

2    the Works and make them available to the world.  That easy availability *is* a substitute for

3    the original Works, as Tara Carreon herself agrees.  Ms. Carreon declares that reading the

4    works digitally, after they are scanned and available on her computer screen, is much

5    better and more enjoyable than reading a paper book.  Carreon Decl., ¶ 25.  Ms. Carreon

6    testifies squarely to substitution and supplanting of the original Works by defendant's

7    making them available in their entirety.  *Id.*  Establishing fair use is defendant's burden.

8    That Penguin has not quantified lost sales because of defendant's conduct, Opp. at 16,

9    does not preclude the fourth factor tilting in Penguin's favor.  *See Gregory*, 689 F.3d at

10   64-65 (finding that the fourth factor favored plaintiff where defendant published entire

11   copies of manuscripts on defendant's website, despite plaintiff's failure to show "specific

12   lost sales or profits").

13           Faced with trying to claim that the widespread publication of complete copies of

14   copyrighted works on the internet would *not* substantially impact the market for

15   Penguin's original works, defendant simply argues that its Websites are unpopular.  Opp.

16   at 17.  Notwithstanding that defendant has failed to establish that fact with admissible

17   evidence, courts routinely reject the argument that an infringer's *de minimis* effect on an

18   existing market tips the fourth factor in the infringer's favor.  *See Los Angeles Times v.*

19   *Free Republic*, 2000 WL 5652000 *18-19 (C.D. Cal. Apr. 4, 2000) (rejecting argument

20   that infringer's small audience favored infringer, and collecting cases).  Indeed, if Google

21   were to replace its Google Books project, which currently only shows "snippets" of

22   copyrighted works, with a project identical to defendant's activities, it is inarguable that

23   the conduct would adversely affect the market, regardless of whether or not *defendant's*

24   Websites are not popular.

25           Defendant's discussion of "licensing" in *Cambridge* is inapposite.  As an initial

26   matter, the Ninth Circuit has rejected the argument advanced in *Cambridge*—that a

27   copyright holder's failure (or outright refusal) to enter into a particular market weighs in

28   favor of the infringer.  *See Worldwide Church of God v. Philadelphia Church of God,*

DWT 26071104v1 0061270-000015

1   *Inc.*, 227 F.3d 1110, 1119 (9th Cir. 2000) (rejecting argument that copyright holder's

2   failure to exploit its work tilted fourth factor to infringer).  Even if *Cambridge's* holding

3   could survive *Worldwide Church*, the court in *Cambridge* considered the situation where

4   the infringer used particular works in a manner that was not licensed by the rights holder,

5   despite the rights holder's provision of licenses to use *other works* in the way the

6   infringer desired.  In other words, the owner's decision to license *some* works for e-

7   reserve distribution, but not others, suggested to that court that the rights holder did not

8   value the licensing market for the particular works.  Here, however, there is *no evidence*

9   *whatsoever* that Penguin—or any other publisher—offers licenses to publish complete

10  works on the internet.  That Penguin does not offer such licenses cannot lead to an

11  inference that Penguin does not value the market for publishing the Works on the

12  internet; to the contrary, its refusal to license the Works for defendant's use is part and

13  parcel of protecting the Works' underlying value.

14        Even if Penguin's licensing, or lack thereof, were somehow relevant, defendant's

15  mischaracterization of the facts is blatant and the actual facts do not resemble those in

16  *Cambridge*.  Defendant's extraordinary characterization of the information in Exhibit 9 to

17  the Carreon declaration—turning a *brief* hiatus in licensing *new* ebook titles to libraries

18  into the preposterous claim that Penguin "did not allow licensing of the Four Titles at

19  all"—is not only egregiously wrong but it does not address that Penguin was *always* in

20  the market with its Works, and indeed was in the ebook market itself, as defendant's own

21  discovery responses demonstrate.  Cunningham Decl., Ex. 2.

22        Finally, the fourth factor, like all fair use factors, is defendant's burden to

23  establish.  *Campbell*, 510 U.S. at 590.  Defendant must establish that its use, and similar

24  use by others, will not harm any existing *or potential markets*, and to the extent the

25  record is lacking, the fair use defense fails.  *Id.* at 594 ("[I]t is impossible to deal with the

26  fourth factor except by recognizing that a silent record on an important factor bearing on

27  fair use disentitled the proponent of the defense to summary judgment."); *see also Dr.*

28  *Seuss Ent's L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1403 (9th Cir. 1997)

DWT 26071104v1 0061270-000015

1   ("Since fair use is an affirmative defense, [Defendants] must bring forward favorable

2   evidence about relevant markets.  Given their failure to submit evidence on this point [the

3   defense fails]." (citing *Campbell*, 510 U.S. at 590-94)).[10]  Defendant does not establish

4   that its making available of the Works in their entirety is not supplanting or substitution,

5   and defendant can make no showing that if everyone did what defendant does it would

6   not affect the "potential market" for Penguin's Works, to use the language of 17 U.S.C.

7   § 107(4).  The fourth factor does not favor defendant.

8                               **III.     CONCLUSION**

9           Because defendant's fair use defense fails as a matter of law, and because

10  defendant does not present this Court with any genuine issue of material fact, Penguin

11  respectfully requests that the Court grant summary judgment in its favor as well as any

12  other relief the Court deems just and proper.

13          DATED this 9th day of February, 2015.

14                               DAVIS WRIGHT TREMAINE LLP

15

16                               By:  s/ Duane A. Bosworth
                                      Duane A. Bosworth, OSB #825077
17                                    Tim Cunningham, OSB #100906
                                      Of Attorneys for Plaintiff *Pro Hac Vice*
18

19

20

21

22

23

24

---

25  [10] That the court in *Cambridge* placed the burden of production of evidence of licenses on
    the plaintiff, 769 F.3d at 1279-80, does not affect this analysis.  First, as discussed above,
26  there are no licenses for the type of use defendant engages in.  Second, the *Cambridge*
    court agreed that the burden of production was properly placed on plaintiff because
27  plaintiff advanced the theory that the availability of licenses cut against the defendant.
    Plaintiff here relies on no such theory, and in any event, even if it had, defendant has had
28  ample opportunity for discovery.

DWT 26071104v1 0061270-000015

# CERTIFICATE OF SERVICE

1

2    I hereby certify that on February 9, 2015, I electronically transmitted the foregoing

3  document and any attachments to the U.S. District Court Clerk's Office using the

4  CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the

5  following CM/ECF registrants.

6

7      John Sullivan
       Attorney at Law
8      10857 Kling Street
       North Hollywood, CA 91602
9

10
                              s/ Duane A. Bosworth
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12

DWT 26071104v1 0061270-000015