**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Penguin Group (USA) Incorporated, | No. CV-13-02075-TUC-JGZ |
| Plaintiff, | **ORDER** |
| v. | |
| American Buddha, | |
| Defendant. | |

Pending before the Court is a Motion for Summary Judgment filed by Plaintiff Penguin Group (USA) Incorporated ("Penguin") on December 16, 2014. (Doc. 160.) Defendant American Buddha filed a response to the Motion on January 20, 2015 and Penguin timely replied. (Docs. 168, 169.) Penguin seeks summary judgment on the single claim alleged in its Second Amended Complaint: that American Buddha engaged in copyright infringement in violation of 17 U.S.C. § 501 by electronically reproducing four literary works copyrighted by Penguin. For the reasons stated herein, the Court will grant the Motion.[1]

**FACTUAL AND PROCEDURAL BACKGROUND**

Penguin owns publication rights to and currently publishes the four works ("the Works") at issue in this case: *Oil!* by Upton Sinclair ("*Oil!*"); *It Can't Happen Here*, by Sinclair Lewis ("*It Can't Happen Here*"); E.J. Kinney's translation of *The Golden Ass*, by Apuleius ("*The Golden Ass*"); and R.E. Lantham's translation of *On the Nature of*

---

[1] This case is suitable for decision without oral argument. *See* L.R. Civ. 7.2(f).

*Things*, by Lucretius ("*On the Nature of Things*").  (PSOF 1-4, 7, 36.)[2]  Penguin actively markets and sells each of the Works.  (PSOF 7.)   American Buddha does not have permission to publish the Works.  (PSOF 8.)

American Buddha makes complete copies of the Works and publishes them on two websites: www.americanbuddha.com and www.naderlibrary.com ("the Websites").  (PSOF 9.)  In order to post the Works on its Websites, American Buddha removes pages from the binding of the physical Works and processes them electronically into a .htm file.  (PSOF 13.) The resulting text on the Websites is identical to the text in the physical copies of the Works, but includes formatting alterations such as bold print, links and images.  (PSOF 14, 21.)  American Buddha publishes the entirety of the Works.  (PSOF 15.)  It creates one page on the Websites for every chapter of each Work, each linked by "go to next page" prompts, through the entirety of the Work.  (PSOF 15.)  In addition to the files on the Websites, American Buddha has made at least six copies of the files on multiple computers and backup media, including laptops and hard drives.  (PSOF 24.)

American Buddha publishes the Works for the specific purpose of providing them to the public.  (PSOF 16.)   The Websites are available to anyone with an internet

---

[2] Penguin's Statement of Facts (Doc. 161) is abbreviated herein as "PSOF." American Buddha did not comply with the Court's April 9, 2014 Scheduling Order, which instructed the parties to "pay particular attention to LRCiv 56.1(b)" and the requirements for separate statements of fact.  (Doc. 104, pgs. 2-3.)  Specifically, LRCiv 56.1, provides that "a party opposing a motion for summary judgment shall file a statement that sets forth, for each paragraph of the moving party's statement, a separately numbered paragraph indicating whether the party disputes that statement and a reference to the specific, admissible portion of the record supporting that party's position." (emphasis added).  American Buddha did not provide a separate statement of facts in response to PSOF.  LRCiv. 56.1 further provides that "each numbered paragraph of the statement of facts set forth in the moving party's separate statement of facts must, unless otherwise ordered, be deemed admitted for purposes of the motion for summary judgment if not specifically controverted by a correspondingly numbered paragraph in the opposing party's separate statement of facts."  In addition, the Court's April 9, 2014, Scheduling Order specifically advised the parties that they were expected to comply with the Court's Local Rules and that failure to comply with the local rules could result in sanctions up to and including dismissal.  (Doc. 104, pg. 2.)  Accordingly, the Court has considered all of Penguin's statements of fact undisputed for purposes of the Motion.  *See* Rule 56(e)(2), Fed. R. Civ. P.  Having reviewed American Buddha's submissions, it does not appear that its allegations would give rise to an issue of material fact.  Notably, American Buddha has not identified an issue of material fact in its Opposition. Accordingly, the Court finds that the motion and supporting materials show that movant is entitled to summary judgment.  *See* Rule 56(e)(3), Fed. R. Civ. P.

connection.  (PSOF 10.)  Each of the Works posted on American Buddha's Websites are accessible via search engines such as Google and Bing.  (PSOF 19.)  Visitors to the Websites may read the entire content of the Works online, save the Works in their entirety, or print the Works in their entirety.  (PSOF 20, 22.)  With one exception, the Works have been available on the Websites continuously since March 2013.  (PSOF 26.) American Buddha does not know, and has no way of knowing, how many people have accessed the Works on the Websites since March 2013.  (PSOF 29.)  American Buddha solicits and receives donations from the public on both Websites. (PSOF 23.)

Elda Rotor, the Associate Publisher and Editorial Director of Penguin Classics at Penguin Random House, testified that the availability of the Works on American Buddha's Websites jeopardizes Penguin's business because it robs Penguin of the ability to control the quality distribution of its works and harms Penguin's reputation as a publisher.  (PSOF 37.)  According to Rotor, the Works as reproduced on American Buddha's Websites "fall far below Penguin's standards for readability for publication." (Doc. 162, pg. 4.)  American Buddha's Websites also provide -- for free -- content that customers and distributors have purchased from Penguin.  (PSOF 38, 43.) As a result, Rotor testified, the presence of the Works on American Buddha's Websites harms Penguin's reputation for excellence as well as its relationships with customers, educators, students, authors, and distributors.  (PSOF 37-43.)

This case has a long and complicated procedural history, not all of which is relevant to the Court's resolution of the pending Motion.  Penguin initiated this action against American Buddha in the United States District Court for the District of Oregon on March 22, 2013. (Doc. 1.)  On December 6, 2013, the case was transferred to this Court. (Docs. 84, 85.)   On July 28, 2014, this Court granted Penguin's Motion for Leave to Amend its First Amended Complaint; Penguin filed a Second Amended Complaint on July 29, 2014.  (Docs. 124, 125.)  In its Second Amended Complaint, Penguin alleges one count of copyright infringement in violation of 17 U.S.C. § 501 arising from American Buddha's online publication of the Works.  (Doc. 125.)  Penguin seeks injunctive relief prohibiting American Buddha from directly or indirectly infringing on Penguin's

copyright rights in the Works.  (Doc. 125.)  Penguin now moves for summary judgment on that claim.

### STANDARD OF REVIEW

In deciding a motion for summary judgment, the Court views the evidence and all reasonable inferences in the light most favorable to the party opposing the motion.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Eisenberg v. Insurance Co. of North America*, 815 F.2d 1285, 1289 (9th Cir. 1987).  Summary judgment is appropriate if the pleadings and supporting documents "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  Material facts are those "that might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248.  A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Id.*

### ANALYSIS

Pursuant to 17 U.S.C. § 106, the owner of a copyright has the exclusive rights to reproduce, distribute and display its copyrighted works.  17 U.S.C. § 107 creates an "fair use" exception to copyright protection for the "fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research."  Here, it is undisputed that American Buddha has infringed on Penguin's copyright by publishing the Works on its Websites.  (Doc. 168, pg. 4; Doc. 169, pg. 1.)  The parties agree that the issue before the Court is whether, as a matter of law, American Buddha's reproduction of Penguin's copyrighted works fell within the "fair use" exception of the Copyright Act.

**a.**   **American Buddha's use of the Works does not fall within the fair use exception**

In determining whether the fair use exception applies, the Court considers four factors: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the

copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.  *See* 17 U.S.C. § 107.   Because the fair use exception is an affirmative defense, American Buddha bears the burden of proving that its publication of the Works falls within the exception.  *Monge v. Maya Magazines, Inc*., 688 F.3d 1164, 1170 (9th Cir. 2012).   Reviewing these four factors in the light most favorable to American Buddha, the Court concludes that American Buddha's publication of the Works does not constitute a fair use as a matter of law and that Penguin is entitled to summary judgment on its copyright infringement claim.

### 1.     The purpose and character of American Buddha's use is non-transformative

In evaluating the purpose and the character of the use, the Court examines whether the use is for "criticism, or comment, or news reporting . . . whether the new work merely supersedes … the original creation … or instead adds something new … in other words, whether and to what extent the new work is transformative."  *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 578-79 (1994) (citations and quotations omitted).   "The goal of copyright, to promote science and the arts, is generally furthered by the creation of transformative works."  *Id*. at 579.   A use is transformative if it does something more than repackage or republish the original copyrighted work.  *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 96 (2d Cir. 2014).   The inquiry is whether the work "adds something new, with a further purpose or different character, altering the first with new expression, meaning or message...."  *Campbell*, 510 U.S. at 579.   Another element of the first factor analysis is whether the work's "purpose" is commercial or has a non-profit aim.  *See Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 803 (9th Cir. 2003) (citing *Campbell*, 510 U.S. at 584).   The more transformative the new work, the less the commercialism of the use may weigh against a finding of fair use.  *Campbell*, 510 U.S. at 579.   The commercial-noncommercial distinction "centers not on whether a user intends to line his own pockets, but rather on 'whether the user stands to profit from exploitation of the copyrighted material without paying the customary price.'"  *Society of*

1   *Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 61 (1ˢᵗ Cir. 2012) (citing

2   *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 562 (1985)).

3       Here, American Buddha reproduces the Works in their entirety.  The version of

4   the Work posted on American Buddha's Websites differs from Penguin's printed version

5   only in that American Buddha includes formatting alterations such as bold print, includes

6   links and images, and converts the text to .htm format.  Where a "substantial portion" of

7   the infringing work is copied verbatim from the copyrighted work, it is not

8   transformative: "a work composed primarily of an original, particularly its heart, with

9   little added or changed, is more likely to be a merely superseding use, fulfilling demand

10  for the original."  *Campbell*, 510 U.S. at 587-88.  There is little transformative about

11  copying the entirety or large portions of a work verbatim.  *See Los Angeles Times v. Free*

12  *Republic*, 2000 WL 565200, *6 (C.D. Cal. 2000) (collecting cases).  Thus, this factor

13  does not support American Buddha's claim of fair use.

14      American Buddha argues that it transforms the Works because the digital format

15  used by American Buddha can be read by screen-reader technology, making it accessible

16  to sight-impaired readers.  (Doc. 168, pg. 8.)  American Buddha also argues that its

17  digital reformatting enables readers to engage in digital searching and text-mining

18  techniques, and that American Buddha adds footnotes, hyperlinks and images to further

19  this goal.  (*Id*.; Doc. 168 pgs. 9-10.) As a threshold matter, for the reasons stated in

20  footnote 2 of this Order, American Buddha has failed to properly dispute Penguin's

21  characterization of the formatting applied to the Works by American Buddha with a

22  reference to a specific, admissible portion of the record supporting American Buddha's

23  position.[3]  Regardless, even if American Buddha's factual assertions were credited, the

---

24
25  [3] In lieu of the controverting statement of facts required by LRCiv 56.1, American
    Buddha filed two declarations.  (Docs. 168-1, 168-2.)  The first is a self-serving
26  declaration from the director of American Buddha.  A conclusory, self-serving affidavit is
    insufficient to create a genuine issue of material fact.  *See F.T.C. v. Publishing Clearing*
27  *House, Inc.*, 104 F.3d 1168 (9ᵗʰ Cir. 1997) (collecting cases).  The second is from a
    witness who was not disclosed by American Buddha until after the deadline for
28  disclosure of witnesses and the deadline for discovery had both run, and is therefore not
    admissible.  *See* Rule 37(c)(1), Fed. R. Civ. P. (if a party fails to provide information or
    identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that

Court would still conclude as a matter of law that American Buddha's use of the Works is not transformative.  American Buddha has essentially "repackage[d] or republish[ed] the original copyrighted work."  *Author's Guild*, 75 F.3d at 96.  The formatting changes applied by American Buddha, even if they make the Works more accessible to sight-impaired readers or researchers, do not imbue the Works with new expression or meaning.[4]

Nor is the Court persuaded by American Buddha's claim that, because it is a non-profit institution, its use of the Works is the type of nonprofit educational purpose recognized as fair use.  The case cited by American Buddha in support of this assertion -- *Cambridge University Press v. Patton*, 769 F.3d 1232, 1267 (11th Cir. 2014) – holds that use of excerpts of printed works "for teaching purposes by a nonprofit, educational institution favors a finding of fair use under the first factor, even when the use is non-transformative in nature."  The use at issue in this case differs from that in *Cambridge University* in two material respects.  First, American Buddha re-publishes the Works in their entirety on the internet, whereas the court in *Cambridge University* repeatedly noted that the copies at issue in that case were excerpts provided to students enrolled in specific courses.  Second, American Buddha is not clearly recognized as providing "a broader public benefit-furthering the education of students at a public university," a fact given

_____

information or witness to supply evidence on a motion). In light of American Buddha's cavalier attitude toward the Court's rules, orders and deadlines, the Court declines to mine these declarations in search of material issues of fact.  As the Ninth Circuit has noted, it is not the job of the district court to scour the record in search of a genuine issue of material fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir.1996). The nonmoving party has the burden of "identify[ing] with reasonable particularity the evidence that precludes summary judgment." *Id.* (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir.1995)).

[4] Contrary to American Buddha's assertion, its use of the Works is not a "full-text searchable database" akin to the use found to be transformative in *Author's Guild*.  (Doc. 168, pg. 8.)  In *Author's Guild*, several educational institutions scanned texts into digital format to create searchable databases that "[do] not allow users to view any portion of the books they are searching. Consequently, in providing this service, the HDL does not add into circulation any new, human-readable copies of any books. Instead, the HDL simply permits users to 'word search'—that is, to locate where specific words or phrases appear in the digitized books." 755 F.3d at 97.  Conversely, American Buddha concedes that its Websites offer entire copies of the Works online.

significant weight by the *Cambridge University* court.[5]   *Id.*   In addition, although American Buddha is a non-profit organization, it solicits and receives donations from the public on its Websites and publishes the Works for the specific purpose of providing them to the public.   Thus, American Buddha stands to gain recognition and financial support through its posting of the Works online.   *See Gregory*, 689 F.3d at 62 (finding that first factor weighs against fair use where defendant benefitted by being able to provide the protected works free of cost to members of his faith and stood to gain recognition within his religious community for providing electronic access to the protected works).   Accordingly, the Court concludes that the first factor weighs in favor of Penguin.

### 2.     The copyrighted Works are creative in nature

The second statutory factor, the nature of the copyrighted work, "recognizes that creative works are closer to the core of intended copyright protection than informational and functional works, with the consequence that fair use is more difficult to establish when the former works are copied." *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.,* 109 F.3d 1394, 1402 (9th Cir. 1997) (citations and quotations omitted).   This factor is less significant than the other three factors in the overall fair use balancing.   *Id.*

Here, *Oil!* and *It Can't Happen Here* are fictional works and therefore at the core of copyright protection.   *The Golden Ass* and *On the Nature of the Universe*, as translations of creative works, "fall closer to the creative end of the copyright spectrum than the informational or factual end." *Gregory*, 689 F.3d at 62.   Accordingly, this factor weighs in favor of Penguin.[6]

//

---

[5] In addition, as Penguin notes, the educational value of American Buddha's reproduction of the Works is hindered by American Buddha's omission of all page numbers from the scanned Works, making actual scholarly citation of the Works impossible.

[6] The Court rejects American Buddha's argument that in evaluating the second factor, the Court should consider whether American Buddha is using the works in a manner consistent with their scholarly nature.   (Doc. 168, pgs. 11-12.)   That is not the legal standard.

### 3.   American Buddha publishes the Works in their entirety

The third factor -- "the amount and substantiality of the portion used in relation to the copyrighted work as a whole" – considers whether the portion of the copyrighted work that is reproduced is reasonable in relation to the purpose of the copying.  *See Campbell,* 510 U.S. at 586.  A reproduction that takes "no more [] than necessary" to accomplish its goal is more likely to be considered fair use.  *Id*. at 589.  Conversely, "while wholesale copying does not preclude fair use per se, copying an entire work militates against a finding of fair use."  *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1118 (9th Cir. 2000) (quotations omitted).

Here, American Buddha has reproduced the Works in their entirety.  That fact, standing alone, tips this factor in favor of Penguin.  In addition, American Buddha reproduces the Works in their entirety with the specific purpose of making the Works available to the public.  This is presumably the same purpose that Penguin had in mind when it obtained the copyrights for the Works, printed them, marketed them and sold them.  *See Worldwide Church*, 227 F.3d at 1118 (a finding that the alleged infringers copied the material to use it for the same intrinsic purpose for which the copyright owner intended it to be used is strong indicia of no fair use).

American Buddha's claim that it does not "use" the entirety of the Works because patrons of its Websites may only view the Works one chapter at a time is without merit.  The case law cited by American Buddha does not support this construction of the third factor.  Contrary to American Buddha's assertion (Doc. 168 n. 20), the *Cambridge* decision does not hold that the defendant "used" a copyrighted work only to the extent that students downloaded it.  American Buddha also attempts to analogize this case to *Author's Guild*, arguing that patrons of its Websites read only snippets of the Works and therefore this case is similar to the searchable database created in *Author's Guild*.  For the reasons previously stated in footnote 4 of this Order, this Court concludes that this case is factually distinguishable from *Author's Guild*.  The "portion used," as the term is used in 17 U.S.C. § 107, refers to the infringer's use, regardless of the portions reviewed or received by the infringer's patrons.  *See, e.g., Los Angeles News Service v. Tullo*, 973

F.2d 791, 797 (9th Cir. 1992) (relevant inquiry for purposes of copyright infringement is the material reproduced by the infringer, not the ultimate use to which the infringer's customers may put that material). Accordingly, this factor weighs in Penguin's favor.

### 4. The effect of the use upon the potential market for the Works supports a finding that American Buddha's use is not a fair use

In evaluating the effect of the infringer's use upon the potential market for or value of the copyrighted work, courts "consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant ... would result in a substantially adverse impact on the potential market for the original." *Campbell*, 510 U.S. at 590 (quotations omitted).   The importance of the fourth factor varies with the relative strength of the other factors. *See Campbell*, 510 U.S. at 590 n. 21.

Here, because the other three factors weigh in favor of Penguin, Penguin's hurdle with respect to the fourth factor is low.  Nevertheless, the Court concludes that the fourth factor weighs in Penguin's favor.  American Buddha argues that Penguin has failed to present financial data regarding the market harm caused by American Buddha's publication of the Works.  Penguin is under no such obligation, however, because "the fourth factor of the fair use inquiry cannot be reduced to strictly monetary terms." *Gregory*, 689 F.3d at 64.  "The Copyright Act looks beyond monetary or commercial value and considers other forms of compensation for a work." *Id.*  In this case, the compensation that Penguin derives from its publication of the Works includes the preservation of its reputation for excellence and the strength of its relationships with distributors and customers.  American Buddha's use of the Works jeopardizes Penguin's business because it robs Penguin of the ability to control the quality distribution of its works and harms Penguin's reputation as a publisher.  It also provides -- for free -- content that customers and distributors have purchased from Penguin, frustrating Penguin's goals and upsetting purchasers who have paid fair value for the Works.

In addition, unrestricted and widespread conduct of the sort engaged in by American Buddha would essentially gut the potential market for the Works.  "If anyone

could freely access the Works, electronically or otherwise, the [plaintiff] would have no market in which to try and publish, disseminate, or sell its translations." *Gregory*, 689 F.3d at 65.  American Buddha is engaged in wholesale reproduction of the Works in their entirety. Because American Buddha's use "supplants or supersedes" Penguin's original copyrighted Works, it is likely to cause a substantially adverse impact on the potential market of the original. *Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596, 607 (9th Cir. 2000) (citations omitted).  Because American Buddha "offered identical or near-identical versions of the creative Works on [its] Website for the precise purpose for which [the plaintiff] had created the Works in the first place, thereby harming their potential market value," *Gregory*, 689 F.3d at 65, the Court concludes that this factor weighs in favor of Penguin.

### b.   Penguin is entitled to a permanent injunction enjoining American Buddha from publishing the Works or any other work copyrighted by Penguin

Because American Buddha concedes that it is in violation of Penguin's copyright and because the Court concludes as a matter of law that American Buddha's use of the Works does not constitute a fair use, Penguin is entitled to judgment and its requested injunctive relief. *See* 17 U.S.C. § 502.  American Buddha did not address Penguin's request for injunctive relief in its response to Penguin's Motion for Summary Judgment; the Court construes American Buddha's failure to respond as consent to the relief requested.  *See* LRCiv 7.2(i) (failure to file answering memoranda may be deemed a consent to the granting of the motion); *see also Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority ... forfeits the point. We will not do his research for him.").   Penguin has demonstrated that American Buddha's use of the Works has caused and will continue to cause irreparable harm to Penguin in the form of reputational damage, encouraging widespread infringement that cannot be remedied by damages, and by robbing Penguin of the right to control its intellectual property.  *See Apple Inc. v. Psystar Corp.*, 658 F.3d 1150 (9th Cir. 2011) ((affirming grant of preliminary injunction because damage to brand,

- 11 -

business reputation and goodwill constituted irreparable harm). In addition, American Buddha has indicated that it intends to continue infringing on Penguin's copyright. The operator of American Buddha's Websites has testified, with respect to the Works: "I'm not going to take them off. … This is a library. They're in the -- in the archive, that's it. You're not getting them off." (PSOF 28.) Accordingly, the Court concludes that injunctive relief is appropriate.

Penguin seeks an injunction prohibiting American Buddha from using the Works as well as any other works published and copyrighted by Penguin. Because American Buddha's liability has been determined, American Buddha has a history of continuing infringement, and a significant threat of future infringement remains, the Court concludes that Penguin is entitled to its requested relief. *See Psystar Corp.*, 658 F.3d at 1161 (citing *Walt Disney Co. v. Powell*, 897 F.2d 565, 568 (D.C. Cir. 1990) ("Where, as here, liability has been determined adversely to the infringer, there has been a history of continuing infringement and a significant threat of future infringement remains, it is appropriate to permanently enjoin the future infringement of works owned by the plaintiff but not in suit.").

## CONCLUSION

1.  Penguin's Motion for Summary Judgment filed on December 16, 2014 (Doc. 160) is GRANTED;

2.  American Buddha is permanently and immediately enjoined from reproducing, distributing and/or displaying the Works, and any other publication for which Penguin holds a copyright, without authorization from Penguin;

3.  American Buddha must bring its conduct into compliance with this Court's injunction within fourteen days of the date this Order is filed;

//
//
//
//
//

4.  The Court expressly retains jurisdiction to enforce the judgment and permanent injunction pertaining to this action;

5.  The Clerk of the Court shall enter judgment and close the file in this matter.

Dated this 8th day of May, 2015.

Jennifer G. Zipps
United States District Judge